11 P.3d 475

Justin SPENCER, Claimant–
Cross Appellant,

v.

ALLPRESS LOGGING, INC.; Jim and
Cheryl Allpress, husband and wife, dba
Allpress Logging, Inc., Defendants,

and

Weyerhaeuser, dba Triple R. Logging,
Defendant–Cross Respondent,

and

Steven R. Schilling, Defendant.

No. 24951.

Supreme Court of Idaho,
Moscow, April 2000 Term.

Sept. 12, 2000.

Grow & Arnold, PLLC, Lewiston, for appellant. James C. Arnold argued.

Evans, Keane LLP, Boise, for respondent. Paul J. Augustine argued.

KIDWELL, Justice.

This case arises from an injury received during a logging operation. The claimant contends that the lumber mill, which purchased the logs, was the statutory employer of the claimant and is thus liable for the claimant's worker's compensation benefits. We agree.

## I.

## FACTS AND PROCEDURAL BACKGROUND

Steve Schilling acquired over 1200 acres of land in North Idaho between 1991 and 1994 valued between $500,000 and $600,000. Schilling purchased these properties by entering into timber sales contracts with different timber mills. One of these properties, known as the Greer Grade property, involved the sale of timber to two separate mills.

Schilling purchased the Greer Grade property for $200,000 in August of 1992. Prior to closing escrow on the Greer Grade property, Schilling contacted several mills to arrange for the best price for the timber on the property. The two mills Schilling ultimately contracted with were the Triple R (a former wholly owned subsidiary of Weyerhaeuser) and Columbia Vista. Columbia agreed to purchase the Douglas fir and Weyerhaeuser agreed to purchase the Ponderosa pine. Both of these mills agreed to advance Schilling $100,000 (secured by the timber on the land) which he used to purchase the property.

Under each of the separate contracts with Weyerhaeuser and Columbia, Schilling was required to harvest the timber and deliver it to their respective mills. The contract between Schilling and Weyerhaeuser provided that Weyerhaeuser would advance Schilling $100,000 and in return Weyerhaeuser would have the right to cut and remove Ponderosa pine from Greer Grade. Additionally, the contract provided that when Schilling delivered timber to Weyerhaeuser, a portion of the contract price would be used to reduce the advance and a portion would be allocated to cover the cost of harvesting the timber. The contract had an ending date of April 1, 1993. If during that time Schilling delivered more than the $100,000 advance, Weyerhaeuser would pay Schilling at the contract rate. If, on the other hand, Schilling did not completely pay off the advance by that date, Weyerhaeuser would have the right to reimbursement of the unpaid balance. At that time the rights to the remaining timber would revert back to Schilling. The contract also provided that Weyerhaeuser would assume the risk of loss during the contract period, and that in addition to the right of ingress and egress, Weyerhaeuser would have the right to build and maintain roads on the property as needed to remove timber.

Schilling's agreement with Columbia was similar to the one with Weyerhaeuser. Schilling was to pay off the $100,000 advance by Columbia by delivering Douglas fir from the Greer Grade property. Columbia had the same rights of ingress and egress, and to build roads as needed. Like the Weyerhaeuser contract, a portion of each delivery to Columbia would be used to pay off the advance, and a portion would be used to pay Schilling for the cost of harvesting the tim-

858

ber. Unlike the Weyerhaeuser contract, however, the Columbia contract did not have a specific ending date. Rather it provided that the contract would end when full delivery had been made.

Schilling contracted with James Allpress of Allpress Logging to cut and deliver the timber to both Weyerhaeuser and Columbia. During the logging, Allpress exclusively used his own equipment, with the exception of Schilling's Caterpillar tractor which was used as a "deadman." Allpress hired, instructed and paid his own employees without any involvement from Schilling, Weyerhaeuser or Columbia. On all but two occasions, checks were issued from Weyerhaeuser and Columbia directly to Schilling who deposited them into his personal account. Schilling would then pay Allpress out of this account. Twice, Weyerhaeuser made a draw (an advanced payment) for harvesting costs. For these two draws, Weyerhaeuser issued the checks to both Schilling and Allpress. Schilling endorsed the checks, and Allpress cashed them.

The logging operation began in October or November of 1992 and continued until shortly after the accident on September 9, 1993. On that date, one of Allpress's employees, claimant Justin Spencer, was severely injured when the line machine he was operating tipped over on top of him. At the time of the accident neither Allpress nor Schilling had worker's compensation insurance coverage for Spencer.

Allpress testified in his deposition that the logs which were being pulled up the hill at the time of the accident were consistent with those going to Weyerhaeuser. Although the matter was never conclusively decided by the Industrial Commission, there was no evidence presented to indicate that the logs were going to Columbia Vista.

Because Schilling was unsatisfied with the progress of the logging, he directed Allpress off the property prior to the completion of either timber contract. Schilling and his fa-

ther then worked from the fall of 1993 through the spring of 1994 to complete the contracts.

Because of delays in the logging process, Weyerhaeuser extended the contract deadline twice. Both of the extensions were granted during the time that Allpress was logging on the property. On March 26, 1993, the deadline was extended to around June 1, 1993, then on July 14, 1993, the contract was extended to August 1, 1993.

Schilling, however, did not complete delivery prior to August 1, 1993. He and his father continued to make deliveries and Weyerhaeuser continued to accept deliveries under the terms of the original contract through the spring of 1994. When the original contract was completed, Schilling and Weyerhaeuser entered into another timber sale agreement. Schilling used part of these proceeds to pay off the outstanding balance owed to Columbia. All timber harvesting concluded by June or July of 1994.

During the logging process, representatives from Weyerhaeuser made several visits to the Greer Grade property. Most of these visits were to check the progress of the logging and to check for weathering conditions on the felled logs. Columbia also made similar visits to the property. During each of the visits by representatives of either Weyerhaeuser or Columbia, the representative would contact only Schilling, and did not provide any logging instruction to either Schilling or Allpress.

Spencer filed a worker's compensation complaint on December 6, 1993. On November 29, 1995, the Industrial Commission held a hearing. On December 13, 1996, the Industrial Commission announced a two to one decision [1] that (1) Allpress was personally liable for Spencer's worker's compensation benefits, (2) Schilling was Spencer's statutory employer and thus personally liable for Spencer's worker's compensation benefits, and (3) Weyerhaeuser was also a statutory

1. The first order of the Commission consisted of Commissioners Lord and Kerns, with Commissioner Gilbert dissenting. The Commission on reconsideration consisted of Commissioners Gilbert and Kile, with Commissioner Kerns dissenting. In the order on reconsideration, Commissioner Kerns noted that "Once again, Commissioners Gilbert and Kile have reversed a previous decision of Commissioners Lord and Kerns that will adversely effect an injured worker. I term this reversal a self-fulfilling prophesy."

employer of Spencer's and was also liable for his worker's compensation benefits. Commissioner Gilbert dissented on the basis that the Idaho Code should not be interpreted as being so broad as to include Weyerhaeuser simply because it purchased raw materials from Schilling.

Spencer moved for reconsideration. On July 21, 1998, the Industrial Commission entered an order on reconsideration which reversed and vacated its prior order. The second order of the Commission held that Allpress and Schilling were still liable for Spencer's worker's compensation benefits, but that Weyerhaeuser was not liable as a statutory employer. On August 31, 1998, Schilling filed a notice of appeal. Spencer filed a notice of cross appeal on September 3, 1998. On January 21, 1999, this Court granted Schilling's motion to dismiss his appeal, leaving Weyerhaeuser to respond only to Spencer's cross appeal.

## II.

### STANDARD OF REVIEW

When this Court reviews a decision from the Industrial Commission, it exercises free review over questions of law, but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings. *Ogden v. Thompson,* 128 Idaho 87, 88, 910 P.2d 759, 760 (1996). Substantial and competent evidence is "relevant evidence which a reasonable mind might accept to support a conclusion." *Boise Orthopedic Clinic v. Idaho State Ins. Fund (In re Wilson),* 128 Idaho 161, 164, 911 P.2d 754, 757 (1996).

Whether an injury arose out of the course of employment is a question of fact to be determined by the Commission. *Kessler ex rel. Kessler v. Payette County,* 129 Idaho 855, 859, 934 P.2d 28, 32 (1997). The Commission's conclusions on the credibility and weight of evidence will not be disturbed unless the conclusions are clearly erroneous. *Zapata v. J.R. Simplot Co.,* 132 Idaho 513, 515, 975 P.2d 1178, 1180 (1999). On appeal, this Court is not to re-weigh the evidence or consider whether it would have reached a different conclusion from the evidence pre-

sented. *See Warden v. Idaho Timber Corp.,* 132 Idaho 454, 457, 974 P.2d 506, 509 (1999).

## III.

### ANALYSIS

**A. Schilling's Continued Delivery Of Logs To Weyerhaeuser Under The Same Terms And Conditions Of The Expired Written Contract Represented An Implied–In–Fact Extension Of The Contract.**

Weyerhaeuser argues that its purchase of the timber from Schilling was under an open-market type of agreement and therefore Weyerhaeuser could not be a statutory employer. After reviewing the record on appeal, and considering oral argument, we have determined that the contract under which Schilling and Weyerhaeuser were operating was a timber sale contract.

Spencer argues that Schilling and Weyerhaeuser had a contractual relationship at the time of his injury on September 9, 1993. Spencer claims that the conduct of both Schilling and Weyerhaeuser after the expiration of their written contract evidences their intention to extend the contract. The Industrial Commission concluded as a matter of law that the contract had expired and that Schilling's and Weyerhaeuser's continued performance under the same terms of the contract was merely Weyerhaeuser's election of its available remedies, and not intended as extending the original contract.

The interpretation and legal effect of an existing contract are questions of law over which this Court exercises free review. *Hanks v. Sawtelle Rentals, Inc.,* 133 Idaho 199, 202–03, 984 P.2d 122, 125–26 (1999). However, "whether a contract exists between the parties is a question for the trier of fact." *Johnson v. Allied Stores Corp.,* 106 Idaho 363, 369, 679 P.2d 640, 646 (1984). Additionally, the issue of whether a contract has been modified is a question for the trier of fact. *Id.* at 368, 679 P.2d at 645. The issue of whether the parties agreed to a modification of a written contract is a question for the trier of fact, and will not be reversed on appeal when supported by substantial and

competent, though conflicting, evidence. *Resource Eng'g, Inc. v. Siler*, 94 Idaho 935, 938, 500 P.2d 836, 839 (1972). While more than a scintilla of proof, substantial evidence is less than a preponderance. *Zapata*, 132 Idaho at 515, 975 P.2d at 1180 (1999). Substantial evidence is "relevant evidence that a reasonable mind might accept to support a conclusion." *Id.*

■■■ Here, the Industrial Commission determined that "rather than an extension of the prior contract, Schilling's continued delivery of logs to Weyerhaeuser was a means selected by the parties to ensure satisfaction of Schilling's obligation under the contract without resorting to litigation," and that it merely constituted an "election of remedies." This conclusion, however, mischaracterizes the actions of the parties. It is clear from the record that the parties intended to extend the time period for the completion of the contract.

The conclusion that the parties intended to continue the contract is supported by the following facts as determined by the Industrial Commission. The Commission found that:

> After the expiration of the second contract modification on August 31, 1993, Schilling had yet to repay the full amount of the $100,000 advance he had received from Weyerhaeuser. Schilling continued to deliver logs to Weyerhaeuser for several months, under the same terms as the expired written agreement, until he had repaid the remainder of the $100,000 advance.

Additionally, during the time that Schilling was delivering logs to Weyerhaeuser after the August 31, expiration, Weyerhaeuser continued to pay Schilling the contract price for the timber delivered, even though the market price for the logs had substantially increased. At trial, William Mulligan, Weyerhaeuser's resource manager, testified that "the sanest way to get this done was to allow Mr. Schilling to *finish the contract*." (Emphasis added.)

When the contract ended on August 31, 1993, Schilling had not fully performed his part of the contract. At that time Weyerhaeuser had the option of suing for breach of contract or extending the contract to allow Schilling time to complete performance. Weyerhaeuser chose the latter. The conduct of the parties points overwhelmingly to the conclusion that they intended to extend the time for performing the contract.

Therefore, we reverse the Industrial Commission's conclusion that Weyerhaeuser and Schilling had agreed to an "election of remedies" rather than impliedly agreeing to extend the terms of the contract. Our determination today, that Weyerhaeuser and Schilling were operating under an implied contract, raises the issue of whether that contractual relationship renders Weyerhaeuser liable as a statutory employer.

## B. Weyerhaeuser Was A Statutory Employer At The Time Of The Accident.

■■■ The Idaho Code sections dealing with the concept of statutory employer "are designed to prevent an employer from avoiding liability under the workmen's compensation statutes by sub-contracting the work to others." *Adam v. Titan Equip. Supply Corp.*, 93 Idaho 644, 646, 470 P.2d 409, 411 (1970). Furthermore, "[t]his Court has recognized that the statutory definition of employer is an expanded definition designed to prevent an employer from avoiding liability under the workmen's compensation statutes by subcontracting the work to others who may be irresponsible and not insure their employees." *Harpole v. State*, 131 Idaho 437, 440, 958 P.2d 594, 597 (1998) (internal quotations omitted).

Section 72–216 of the Idaho Code provides:

> An employer subject to the provisions of this law shall be liable for compensation to an employee of a contractor or subcontractor under him who has not complied with the provisions of section 72–301 in any case where such employer would have been liable for compensation if such employee had been working directly for such employer.

I.C. § 72–216.

■■■ Spencer claims that Weyerhaeuser is liable because Weyerhaeuser is the employer who contracted with Schilling and who

also subcontracted with Allpress who hired Spencer. There has been little legal analysis of this section of the Idaho Code. The closest case on point is *Findley v. Flanigan*, 84 Idaho 473, 373 P.2d 551 (1962), wherein this Court considered the application of the predecessor of I.C. § 72–216.

In *Findley*, the company operating the mill was in the practice of buying "shake bolts" that were delivered to it. *Id.* at 476, 373 P.2d at 554. The mill did not do any of its own timber harvesting, nor did it own any logging equipment. *Id.* McCoy, an individual who had the experience and equipment to harvest timber, urged the mill to purchase a stand of timber. *Id.* Under the terms of the deal, McCoy was to harvest the timber in exchange for milled cedar posts and A & B would receive the remaining shake bolts. *Id.*

During the harvesting process, McCoy hired claimant to build roads on the property to accommodate the harvesting of the timber. *Id.* Claimant provided his own equipment for the road construction as well as his pickup truck used to haul shake bolts. *Id.* When claimant was injured while driving home from the timber area, he made a claim against the mill as a direct employer. *Id.* at 477, 373 P.2d at 555.

On appeal, this Court held that the mill was the statutory employer of the claimant at the time of the accident. It held that the mill's "contractor was McCoy, and that claimant was an employee of the contractor. It thus follows . . . that [the mill] was claimant's statutory employer, pursuant to I.C. § 72–811 [now § 72–216]." *Id.* at 479, 373 P.2d at 557.

In the present case, Weyerhaeuser attempts to distinguish *Findley* on the basis that in *Findley* the mill purchased standing trees and then hired the logger to harvest them, whereas here, Weyerhaeuser bought the trees from Schilling who was responsible for the harvesting of the timber. Weyerhaeuser argues that the mill in *Findley* contracted with claimant's employer, McCoy, for a service, unlike the present case where Weyerhaeuser only contracted with Schilling for the purchase of timber, not of Schilling's services.

While there may be a difference in these cases, it is not as critical as Weyerhaeuser maintains. In the present case, Weyerhaeuser contracted with Schilling for the purchase of the timber, and Weyerhaeuser contracted to pay Schilling for the price of harvesting. In their agreement, part of the value of each load delivered was paid against Schilling's $100,000 advance, but part of the price was also included as part of the cost for delivery. While Weyerhaeuser did not care who did the harvesting, it paid the costs of logging the pine. Thus, Weyerhaeuser was contracting with Schilling for logging the pine on the property.

Thus, we hold in keeping with the objectives of the Worker's Compensation Act, that Weyerhaeuser is liable to Spencer because Weyerhaeuser hired a contractor who hired a subcontractor who had not complied with the worker's compensation provisions. Having determined that the Industrial Commission erred in holding that Weyerhaeuser was not liable for Spencer's worker's compensation benefits, we need not consider the remainder of Spencer's issues on appeal.

## IV.

### CONCLUSION

The Industrial Commission erred in its conclusion that Weyerhaeuser was not liable for Spencer's worker's compensation benefits because the contract between Weyerhaeuser and Schilling had expired. We reverse the holding of the Industrial Commission on the issue of Weyerhaeuser's liability for Spencer's worker's compensation benefits. No attorney fees are awarded on appeal. Costs to cross-appellant.

Chief Justice TROUT, Justices SILAK, SCHROEDER and WALTERS concur.