127 P.3d 962

**J. Steven KOLAR and Shelly L. Kolar, husband and wife, Plaintiffs–Appellants,**

v.

**CASSIA COUNTY IDAHO, Scott J. Hitt, Burley Highway District, Albion Highway District, Defendants–Respondents.**

No. 30727.

Supreme Court of Idaho, Twin Falls, November 2005 Term.

Dec. 28, 2005.

Parker Law Firm, Twin Falls, and De-Haan & Associates, Twin Falls, for appellants. Harry DeHaan argued.

Naylor & Hales, P.C., Boise, for respondent Albion Highway District. Colleen D. Zahn argued.

Moore & Baskin, LLP, Boise, for respondent Burley Highway District. Michael Moore argued.

Anderson Julian & Hull, Boise, for respondent Cassia County. Brian Julian argued.

JONES, Justice.

This appeal gives us occasion to consider the "statutory employer" provision in Idaho's worker's compensation scheme, I.C. § 72–223(1). Appellant Steven Kolar was employed by an engineering firm and working on the respondents' road construction project when he was run over by a dump truck driven by an employee of one of the respondents. Mr. Kolar sued and the district court entered summary judgment in the respondents' favor, ruling the respondents were his so-called statutory employers and thus immune from suit.

## I.

The United States Forest Service owns Howell Canyon Road, which leads from Albion, Idaho, to, among other places, the Pomerelle Mountain Resort in southern Idaho. In the 1960s the Forest Service entered into an agreement with respondents Cassia County, Albion Highway District, and Burley Highway District, whereby those local agencies would maintain Howell Canyon Road and the Forest Service would provide the funds. The respondents are parties to a 1991 agreement among themselves relating to the maintenance of the road. According to this agreement, Burley Highway District agreed to provide the personnel, equipment, and management necessary to maintain the road. Cassia County and Albion Highway District would provide the funds for maintaining the road. They all agreed to be jointly and severally liable for damage to persons or property occurring in the course of maintenance of the road. By the late 1990s the road began to deteriorate and so the respondents commenced a project to improve it.[1] In 2000 Burley Highway District contracted with JUB Engineers, Inc., an engineering firm, to provide engineering services on this project. It does not appear that representatives from either Cassia County or Albion Highway district were signatories to the Burley Highway District–JUB Engineers agreement. Mr. Kolar was employed as an "engineering tech" with JUB Engineers.

In 2001, Mr. Kolar was on the construction site working for his firm when he was run over by a dump truck driven by one Scott Hitt, a Burley Highway District employee. Mr. Kolar suffered severe injuries and received worker's compensation benefits from the firm for which he worked. After complying with the Idaho Tort Claims Act, Mr. Kolar sued the respondents for negligence in 2003. The respondents moved for summary judgment, contending that they were Mr. Kolar's statutory employers under I.C. § 72–223 and hence immune from suit under the exclusivity-of-remedies provisions in I.C. §§ 72–209 and 72–211. The district court agreed and entered summary judgment in their favor. The court neglected, though, to address Mr. Kolar's argument that § 72–223 violated his rights to equal protection and due process under the Fourteenth Amendment to the United States Constitution, so Mr. Kolar filed a motion to reconsider. After a hearing, the court issued another written decision, ruling § 72–223 did not violate the Equal Protection Clause and affirmed its

---

1. Apparently the funds for this particular project were obtained pursuant to a 2000 agreement between the Federal Highway Administration and the respondents. This agreement was part of the underlying agreement between the respondents and the Forest Service.

prior decision. For reasons unknown to us, it did not discuss the due process claim.

## II.

We have before us two principal issues. First, we must decide whether the district court had jurisdiction to determine whether the respondents were Mr. Kolar's statutory employers. Second, we consider whether the respondents were Mr. Kolar's statutory employers or whether they were third parties amenable to suit.

■ Before discussing these questions, however, an issue in Cassia County's response brief should be discussed and disposed of. Cassia County contends it owed no duty to Mr. Kolar. This issue was never raised in the district court, either in writing or at either of the two hearings on the motion for summary judgment.[2] The district court did not rule on the matter. In other words, this appeal is the first time the argument has appeared. We have on many occasions said we will not entertain issues or theories not raised in the court below. *Kirkman v. Stoker*, 134 Idaho 541, 544, 6 P.3d 397, 400 (2000). We see no reason to start doing so now.

We note also the standard by which we review this case. Mr. Kolar's claims were disposed of on a motion for summary judgment. Summary judgment is proper only if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Idaho R. Civ. P. 56(c).

## A.

Mr. Kolar argues first that the district court lacked jurisdiction to determine whether the respondents were his statutory employers. For this theory he cites I.C. § 72–707, which provides: "All questions arising under this law, if not settled by agreement or stipulation of the interested parties with the approval of the [Industrial C]ommission, ex-

cept as otherwise herein provided, shall be determined by the [C]ommission."

■ The statutory grant of exclusive jurisdiction to the Industrial Commission for "all questions arising under" the worker's compensation scheme does not include a grant of exclusive jurisdiction to interpret and apply the statutory employer provision insofar as those tasks are necessary to determine whether, in an ordinary common-law negligence suit, a defendant is the plaintiff's statutory employer. *See Dominguez v. Evergreen Resources, Inc.*, 142 Idaho 7, 121 P.3d 938 (2005) (courts have jurisdiction to determine whether exception to I.C. § 72–209(3) applies; courts have jurisdiction over tort suits *outside the worker's compensation scheme*). This is nothing new—as the respondents point out, we have previously implicitly endorsed such exercise of jurisdiction by the district court for such questions. For example, in *Robison v. Bateman–Hall, Inc.*, 139 Idaho 207, 76 P.3d 951 (2003), we considered the district court's interpretation of § 72–223 in deciding whether the defendants were the plaintiff's statutory employers. Although the district court's jurisdiction to answer the question was not raised as an issue, we expressed no concern that the district court had improperly appropriated for itself a question properly reserved for the Industrial Commission.

The cases on which Mr. Kolar relies do not help his case. In *West v. State*, 112 Idaho 1038, 739 P.2d 337 (1987), the plaintiff sued the Industrial Commission and the State Insurance Fund alleging both entities had dealt improperly with the plaintiff's workers' compensation claim. 112 Idaho at 1039, 739 P.2d at 338. The plaintiff had moved the Commission to reopen the proceedings before she sued in district court. *Id.* The district court dismissed the plaintiff's claim and on appeal this Court suspended action in the district court suit. *Id.* Idaho Code § 72–733 strips district courts of any jurisdiction to "review, vacate, set aside, reverse, revise, correct, amend, or annul any order or award of the commission, or to suspend or delay the execution or operation thereof, or to enjoin, re-

---

**2.** It is not known whether Cassia County denied such a duty in its answer, as the respondents' answer or answers were not made part of the record.

strain or interfere with the commission in performance of its duties." So, said the Court:

> It is clear that the essence of [the plaintiff's] complaint before the district court is that she was injured in an industrial accident and received an inadequate award for those injuries. Presently pending before the Commission is [the plaintiff's] motion to set aside the award and reopen the proceedings. It is likewise clear that the district courts are expressly forbidden to exercise any jurisdiction in any cause seeking in any way to interfere with the actions or jurisdiction of the Industrial Commission.

*Id.* The question in *West*, whether a district court had jurisdiction to review the Industrial Commission's award, is not anything like the question in this case.

And neither was the question in *Idaho State Ins. Fund. v. Turner,* 130 Idaho 190, 938 P.2d 1228 (1997). In that case, the State Insurance Fund sued a worker's compensation claimant to recover disability benefits paid to him. 130 Idaho at 191, 938 P.2d at 1229. The Insurance Fund contended it was subrogated to the claimant's award paid by the liable third party under § 72–223. *Id.* Idaho Code § 72–223(3) grants an injured worker's employer a right of subrogation in the employee's rights against the third party, where that employer has compensated its injured employee for acts committed by a third party. Because the Insurance Fund's right to subrogation arose under the worker's compensation scheme, the Court ruled that "[w]hether [the State Insurance Fund] is entitled to subrogation pursuant to I.C. § 72–223(3) is a question arising under the worker's compensation law which is within the exclusive jurisdiction of the Industrial Commission." *Id.*

■ Even if Mr. Kolar's case were different enough to render the rule from *Dominguez* inapplicable, Mr. Kolar's theory is incompatible with the statutory scheme. The Legislature granted a common-law right of action in an injured worker against a third party. I.C. § 72–223(2). The Legislature did not bother to define "third party" but it expressly provided two categories of employ-

ers that are not. *See* I.C. § 72–223(1). Since status as a statutory employer is a defense to a common law negligence action, deciding whether a defendant is a third party or a statutory employer, when that defense is raised, necessarily attends the district court's task in ruling on matters in such suits. Were we to accept Mr. Kolar's theory, once the defendant raised the statutory employer defense, the question would have to be answered by the Industrial Commission. Then, assuming the Industrial Commission ruled the defendant was a third party who could be sued, the case would go back to district court. We do not believe the Legislature intended such a cumbersome process.

■ And finally, Mr. Kolar has lodged constitutional challenges to the worker's compensation scheme. District courts, we have held, are the proper forum for answering these questions, not the Industrial Commission. *See Owsley v. Idaho Industrial Comm'n,* 141 Idaho 129, 106 P.3d 455 (2005).

### B.

Mr. Kolar next contends the respondents were not his statutory employers. The theory goes that since his employer was an independent contractor, his employer was not a "contractor[ ] or subcontractor[ ]" within the meaning of I.C. § 72–223. He points us to I.C. § 54–1218, which requires highway districts to have their construction plans prepared by an independent professional engineer. Mr. Kolar contends this provision forecloses any finding that a municipality can be deemed a statutory employer, since, under that statute, an engineering firm preparing plans for, and reviewing construction done by, a public entity must be "devoid of public ... affiliation." We do not agree.

With the worker's compensation law, the Legislature removed—with few exceptions— all workplace injuries from "private controversy." I.C. § 72–201. To that end, the Legislature crafted a system whereby "sure and certain relief" would be provided to injured workers regardless of fault. *Id.* This "sure and certain relief" is provided "to the exclusion of every other remedy, proceeding, or compensation, except as is otherwise pro-

vided" in the worker's compensation scheme. *Id.; see also* I.C. § 72–209(1); I.C. § 72–211. The exception is found at I.C. § 72–223, which allows an injured worker to sue a so-called "third party" who may be liable for damages stemming from the injury. I.C. § 72–223(1), (2).

As noted above, I.C. § 72–223(1) identifies two categories of employers who are not third parties: (1) "those employers described in section 72–216, Idaho Code, having under them contractors or subcontractors who have in fact complied with the provisions of section 72–301, Idaho Code" (which will be referred to herein as a category one employer); and (2) "the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workmen there employed" (a category two employer). Thus, if the respondents meet either of these categories, they were Mr. Kolar's statutory employers and cannot be sued.

Mr. Kolar contends that the Legislature's reference to "contractors or subcontractors" in § 72–223 excludes "independent contractors," which are specially defined (*see* I.C. § 72–102(16)), from statutory employer status. In other words, he contends, the respondents hired an independent contractor and thus would *not* have been liable for his compensation if JUB had not complied with § 72–301. The argument goes that unlike the other contractors on the project, respondents did not require JUB to bid for its contract; JUB was not identified as a contractor or subcontractor on any bid; and, in fact, JUB was hired to provide professional services, which, he says, cannot be deemed "employees" of a client.

■ Mr. Kolar's theory is interesting, but it cannot take him where he wants to go. First, we have categorized independent contractors who employed the injured worker as "contractors or subcontractors" within the meaning of § 72–223. *See Spencer v. Allpress Logging, Inc.*, 134 Idaho 856, 860–61, 11 P.3d 475, 479–80 (2000). Under the

facts of this case, we see no need to characterize the respondents as something else. An "employer" is "any person[ 3 ] who has expressly or impliedly hired or contracted the services of another." I.C. § 72–102(12)(a). This definition "includes contractors and subcontractors." *Id.* It is undisputed that the respondents contracted the services of JUB Engineers. They are therefore an "employer" within the meaning of that term as it is found in § 72–223(1).

The respondents are also an employer "described in section 72–216, Idaho Code." Idaho Code § 72–301 provides: "Every employer shall secure the payment of compensation under this law...." Since the respondents were an "employer," they were required to comply with § 72–301. Idaho Code § 72–216 imposes liability on employers "for compensation to an employee of a contractor or subcontractor under him who has not complied with the provisions of section 72–301 in any case where such employer would have been liable for such compensation if such employee had been working directly for such employer." In other words, if the employee's employer (in this case JUB Engineers) has not complied with § 72–301, the person who contracted the services of the injured employee's employer (in this case the respondents) is liable for payment of compensation to the non-compliant employer's employee (Mr. Kolar).

■ Respondents meet this criterion, as well. To illustrate: in *Venters v. Sorrento Delaware, Inc.*, 141 Idaho 245, 108 P.3d 392 (2005), the deceased worker was an employee of 3–C Trucking. 141 Idaho at 248, 108 P.3d at 395. Sorrento, a company engaged in the making of cheese, contracted with 3–C Trucking to have the trucking company come onto Sorrento's cheese-making facility, collect wastewater from the cheese-making process, and haul said wastewater to Montierth Farms, a local farming operation. *Id.* at 247, 108 P.3d at 398. Montierth Farms and 3–C had no contractual relationship. *Id.* at 245, 108 P.3d at 396. While on Montierth Farms property waiting to dump his load of wastewater, the worker was run over and killed. *Id.* at 248, 108 P.3d at 395. The worker's

---

**3.** "Person" includes "the state or any political subdivision thereof." I.C. § 72–102(23).

survivors sued both Sorrento and Montierth Farms. The district court granted Sorrento's motion for summary judgment, ruling the company was the worker's statutory employer. On appeal, we affirmed: "As an employer of a contractor [3–C Trucking], Sorrento would not have been permitted to avoid liability to [the worker] under the Idaho worker's compensation statutes should 3–C Trucking have failed to comply with the worker's compensation statutes." *Id.*

Much like the worker in *Venters* was the statutory employee of the company with which his direct employer contracted, Mr. Kolar was the direct employee of JUB, which in turn contracted with the respondents. At the time of his unfortunate injury, Mr. Kolar was doing the work JUB had contracted to do. Indeed, all of the work JUB was obligated to do under its contract with the Burley Highway District was work required under the main contract for the project. Thus, the respondents would not have been permitted to escape liability to Mr. Kolar if JUB had not complied with § 72–301. Hence, they were employers as contemplated in I.C. § 72–216.

Mr. Kolar's argument seems to be that because the respondents had no choice but to hire an independent firm, that firm is somehow not "under" them for purposes of statutory employer analysis. This theory is consistent with neither the Legislature's express purpose of "prevent[ing] an employer from avoiding liability under the workmen's compensation statutes by sub-contracting the work to others," *Adam v. Titan Equip. Supply Corp.*, 93 Idaho 644, 646, 470 P.2d 409, 411 (1970), nor our interpretation of "contractors and subcontractors" within the meaning of § 72–223. *See Spencer, supra,* 134 Idaho 856, 11 P.3d 475. Futhermore, § 72–102 defines "employer" quite broadly; section 72–203 states quite clearly that the worker's compensation law "shall apply to all public employment and to all private employment ... not expressly exempt by the provisions of section 72–212;" sections 72–209 and 72–211 make plainly clear that the exceptions to the exclusivity provisions are quite limited; and neither sections 72–223 nor 72–212 allow for the "professional services" exception Mr.

Kolar advocates. In short, there is nothing to suggest the Legislature intended to exempt entities subject to I.C. § 54–1218 from this scheme.

Because we conclude that the respondents were category one employers, they were immune from suit. Whether they were category two employers is accordingly rendered irrelevant.

### C.

Mr. Kolar next argues that I.C. § 72–223 violates the equal protection and due process guarantees found in the Federal and State Constitutions. *See* U.S. Const. amend. XIV; Idaho Const. art. I, § 2, art. XII, § 1.

### 1.

■ Mr. Kolar contends the grant of immunity to statutory employers fails the rational basis test and thus denies his guarantee of equal protection. A statute denies equal protection when (1) the classification is totally unrelated to the state's goals, and (2) there is no conceivable state of facts that will support the classification. *State Ins. Fund v. Van Tine,* 132 Idaho 902, 909, 980 P.2d 566, 573 (1999). Mr. Kolar is challenging the classification of employers—a class of which he is not a member and thus for which he has no standing to advocate. *Venters,* 141 Idaho at 252, 108 P.3d at 399.

■ Assuming his challenge is to an indirect, de facto statutory classification of employees (which he has not explicitly argued), Mr. Kolar's argument fails anyway. We have previously said that a rational basis exists for the grant of immunity in § 72–223, even if the statutory employer has not had to pay benefits because the direct employer has. *See Venters,* 141 Idaho at 252, 108 P.3d at 399. Mr. Kolar has added nothing new to the argument.

### 2.

Mr. Kolar's due process argument is likewise unavailing. He contends that a 1996 legislative "flip-flop", whereby those employers that had been third parties now were not, *see* 1996 Idaho Sess. Laws ch. 191, § 1, p. 599, renders § 72–223 ambiguous, vague, in-

congruous with I.C. §§ 72–216 and 54–1218, and thus fundamentally unfair.

 Before addressing the merits of Mr. Kolar's due process claim, we consider the respondents' contention that Mr. Kolar did not raise the due process argument in the district court. To properly preserve an issue for appeal, the one must either receive an adverse ruling on the issue or raise it in the court below. *See McPheters v. Maile,* 138 Idaho 391, 397, 64 P.3d 317, 323 (2003). The district court never ruled on the due process claim; thus the question becomes whether the issue was properly raised. This, in turn, depends upon what the meaning of the word "raised" is. The Court recognizes a distinction between issues not formally raised and issues that "never surfaced" below. *Manookian v. Blaine County,* 112 Idaho 697, 700, 735 P.2d 1008, 1011 (1987). Issues not formally raised may be considered if they are tried by the express or implied consent of the parties, Idaho R. Civ. P. 15(b); issues never raised will not be considered, *Manookian,* 112 Idaho at 700, 735 P.2d at 1011.

 Mr. Kolar's memorandum opposing the respondents' motion for summary judgment did not include equal protection or due process arguments. At the hearing on the motion for summary judgment, Mr. Kolar's counsel stated:

> The next issue that I think the court needs to focus on is the constitutional issues and I did not address those in my brief. To he honest with you, I didn't even think of them until we were here today; but I know I'm not barred from making that argument before the court, so we ask the court to look at the issues of due process and equal protection and, if the court deems it appropriate, to extend the briefing deadline so that we can address those issues and that the defendants in this matter have an opportunity to address those issues also so that it's a fair playing field for everyone.

At the hearing, the respondents lodged no objection to Mr. Kolar's raising of the issue at that point, but it is unclear whether the district court ever granted more time for briefing on the issue. The judge never indicated whether he would or would not grant more time for briefing this issue. In his motion for reconsideration, Mr. Kolar asked the district court to consider the equal protection and due process issues, and he did argue them at the hearing on the motion [4] (the respondents did not address them in their portion of the argument). As noted above, the district court did not discuss due process nor indicate why the due process claim was not addressed. When presented with the respondents' argument in their response briefs in this appeal—that he did not properly raise the issue below—Mr. Kolar's reply brief on appeal did not discuss the due process issue. In short, while the issue was raised and argued, it was not supported with any real authority. However, the district court ruled on the equal protection claim, having been presented with the same amount of argument and authority on that issue as it was provided on the due process issue. Accordingly, we will assume that the issue was raised for purposes of appeal.

 Not that it makes any difference. The vagueness and uncertainty arguments are belied by the plain language of the statute, which clearly states who is not a third party. Civil or non-criminal statutes are not unconstitutionally vague if "persons of reasonable intelligence can derive core meaning" from them. *Olsen v. J.A. Freeman Co.,* 117 Idaho 706, 716, 791 P.2d 1285, 1295 (1990) (quoting *Cotton States Mut. Ins. Co. v. Anderson,* 749 F.2d 663 (11th Cir.1984)). We have on previous occasions been able to derive core meaning from the post–1996 language of § 72–223. *See Venters, supra; Robison v. Bateman–Hall, supra.* Nothing in the facts of this case prevents us from being able to derive core meaning from the statute.

 The other part of Mr. Kolar's argument addresses I.C. § 54–1218. He contends the district court's ruling cannot be reconciled with that statute, I.C. § 72–223, and I.C. § 72–216 (apparently for the same

---

**4.** At the hearing on reconsideration, counsel for Mr. Kolar indicated that there was some written argument submitted to the court regarding the equal protection and due process contentions. However, no such written argument is contained in the record on appeal.

reasons they were incongruous in the statutory employer analysis), and contends this incongruity violates due process. He does not, however, explain how the asserted irreconcilability of these statutes (addressed above) violates due process, and since the statutes are not irreconcilable, this argument fails.

Finally, Mr. Kolar goes on to argue, in the rhetorical sense, that the Legislature is not free to change its mind, implying that the 1996 legislative change violated due process. It is well-settled that the Legislature has the constitutional authority to "repeal any part of the common law. . . ." *Olsen v. J.A. Freeman*, 117 Idaho at 717, 791 P.2d at 1294 (quoting *Vogts v. Guerrette*, 142 Colo. 527, 351 P.2d 851, 865 (1960)). Due process claims do not arise simply because certain classes of employers who were subject to suit before the 1996 amendments were not thereafter. The relevant question is whether the statute as it now exists, and as it has been applied to Mr. Kolar, violates due process. As discussed above, it does not.

**D.**

Mr. Kolar, Cassia County, and Albion Highway District seek attorney fees. In his opening brief, Mr. Kolar seeks fees under I.C. § 12–121. Burley Highway District correctly points out in its response brief that awards of attorney fees in cases pursued under the tort claims act are controlled by I.C. § 6–918A, not I.C. § 12–121. *Tomich v. City of Pocatello*, 127 Idaho 394, 901 P.2d 501 (1995). Mr. Kolar did not request fees under the appropriate section and has not prevailed. Hence, Mr. Kolar is not entitled to fees.

Albion Highway District seeks fees on the basis that Mr. Kolar has brought this appeal frivolously, unreasonably, and/or without foundation. We are not left with such an impression. Accordingly, Albion Highway District will not be awarded fees. Finally, Cassia County's bare request for fees, presented without any authority or argument in support, is denied. *See Bream v. Benscoter*, 139 Idaho 364, 79 P.3d 723 (2003).

**III.**

The decision of the district court is affirmed. Costs are awarded to the respondents.

Chief Justice SCHROEDER, Justices TROUT, EISMANN and BURDICK concur.