IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 47653

| | | |
|---|---|---|
| DALE KELLY and NANCY KELLY, Husband and Wife, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | Boise, January 2021 Term |
| v. | ) ) | Opinion Filed: April 26, 2021 |
| TRC FABRICATION, LLC, an Idaho limited liability company, | ) ) ) ) | Melanie Gagnepain, Clerk |
| Defendant-Respondent. | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Dane H. Watkins, Jr., District Judge.

The decision of the district court is reversed, the judgment is vacated, and the case is remanded.

Racine Olson PLLP, Pocatello, for appellants Dale and Nancy Kelly. Brent O. Roche argued.

Hawley Troxell Ennis & Hawley LLP, Pocatello, for respondent TRC Fabrication, LLC. John A. Bailey, Jr., argued.

_____

STEGNER, Justice.

This case explores the scope of tort immunity afforded to a putative employer under the Idaho Worker's Compensation Act. The question presented is whether the immunity afforded a statutory employer applies to TRC Fabrication, LLC, to bar Dale and Nancy Kelly's complaint for damages.

The facts are relatively straight-forward. TRC Fabrication, LLC, (TRC) purchased steel tubing from Brown Strauss Steel Co. (Brown Strauss), a company located in Fontana, California. Under the sales contract, Brown Strauss sold the tubing "free on board" to TRC, which meant Brown Strauss would retain ownership of the tubing until it was tendered to and accepted by TRC at its Idaho Falls, Idaho, facility. In other words, Brown Strauss agreed that the price of the metal tubing included transportation of the tubing from California to Idaho. Brown Strauss contracted with Jay Transport, a trucking company based in Rigby, Idaho, which in turn engaged Dale Kelly

1

(Kelly), an independent owner-operator of a semi-truck to transport the tubing. Kelly hauled the tubing to Idaho Falls and delivered the load to TRC. When employees of TRC began to unload the tubing from the trailer, a forklift operator dropped the steel tubing, which then slid across the pavement and struck Kelly, seriously injuring his right leg, ankle, and foot.

Kelly and his wife Nancy filed a complaint against TRC, seeking to recover damages for negligence and loss of consortium. After TRC filed a motion seeking summary judgment, the district court granted the motion and dismissed the Kellys' complaint. The district court concluded that Idaho's worker's compensation law extended statutory immunity to TRC and limited the Kellys' recovery to workers' compensation benefits. For the reasons set out below, we reverse the district court's order granting summary judgment, vacate the judgment entered, and remand the case for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background.

Kelly is a professional truck driver. At the time of the events giving rise to the case, Kelly was an owner-operator of a semi-truck and flatbed trailer.

TRC is an Idaho limited liability company that performs steel fabrication work. In January 2018, TRC purchased more than 43,000 pounds of metal tubing from Brown Strauss. Under the terms of the sales contract, it was Brown Strauss's responsibility to arrange delivery of the tubing to TRC. Brown Strauss bore the risk of loss until delivery to and acceptance by TRC. Brown Strauss arranged transportation through Jay Transport. Jay Transport then contracted with Kelly to haul the metal tubing from California to Idaho.

Kelly picked up the shipment on January 19, 2018, and arrived at TRC's facility on January 22, 2018. Unfortunately, during unloading the TRC employee operating the telehandler[1] lost control of the top tier of the shipment after lifting it from Kelly's trailer. Pieces of heavy steel tubing slid along the pavement, striking Kelly and severely injuring his right leg, ankle, and foot. Kelly was transported to the hospital by ambulance. Kelly has undergone three surgeries as a result of his injuries. His medical expenses at the time of the hearing on the motion for summary judgment exceeded $145,000.

---

[1] The Kellys' complaint describes this machine as "a Gehl telehandler, aka a large forklift."

**B. Procedural Background.**

On December 20, 2018, Kelly and his wife Nancy[2] filed suit against TRC, alleging that TRC's forklift operator was negligent in his operation of the telehandler, and claiming damages for personal injury and loss of consortium. TRC answered, and asserted numerous affirmative defenses, the chief of which (for purposes of this appeal) was that the Kellys' exclusive remedy was through Idaho's worker's compensation system.

After discovery, TRC moved for summary judgment, arguing that it was both a category one and category two statutory employer of Kelly, and that TRC was entitled to immunity under the exclusive remedy rule of Idaho Code section 72-201, which shields most workplace injuries from "private controversy." TRC also argued that, because Kelly could only recover through the worker's compensation system, Nancy's derivative claim of loss of consortium necessarily failed. (Citing *Coddington v. City of Lewiston*, 96 Idaho 135, 525 P.2d 330 (1974) for this proposition.)

The Kellys responded, arguing that immunity under the Idaho Worker's Compensation Act only applies in the context of a contract for *services*, and that because the core contract in the case was for the sale of goods, the Idaho Worker's Compensation Act does not apply. The Kellys reasoned that TRC was required to establish "the existence of an unbroken chain of interrelated *contracts for services* between TRC and the injured party[.]" (Italics in original.) The Kellys contended that under the Uniform Commercial Code's "predominant factor test," "a contract for the sale of goods with ancillary delivery is still a contract for the sale of goods and not a contract for services[.]"

In response, TRC argued that there was no statutory requirement of an "unbroken chain" of service contracts for TRC to be a category one statutory employer under the Idaho Worker's Compensation Act. TRC also argued that the Kellys' proposed interpretation would undermine the statutory employer doctrine. In addition, TRC asserted that it was a category two statutory employer.

Following briefing and oral argument, the district court entered its memorandum decision and order, granting TRC's motion for summary judgment and dismissing the Kellys' complaint. The district court found that TRC was a category one statutory employer, relying on the definition in Idaho Code section 72-102(13)(a) and on *Spencer v. Allpress Logging, Inc.*, 134 Idaho 856, 11

---

[2] When referring to Nancy Kelly in her individual capacity, she will be referred to as "Nancy." When referring to Dale and Nancy Kelly collectively, they will be referred to as "the Kellys."

P.3d 475 (2000), in which this Court held that a contract involving both goods and services forms the necessary predicate for the applicability of statutory employer immunity. Although the district court held that there was a genuine issue of material fact regarding TRC's alternate argument, i.e., whether TRC was a category *two* statutory employer, the district court concluded that TRC was Kelly's category one statutory employer and therefore entitled to summary judgment. Finally, the district court concluded that Nancy could not maintain her loss of consortium claim because TRC was immune from being sued in tort as a result of Kelly's injuries.

The Kellys timely appealed.

## II.    STANDARD OF REVIEW

"This Court's review of a trial court's ruling on a motion for summary judgment is the same standard used by the trial court in originally ruling on the motion." *Robison v. Bateman-Hall, Inc.*, 139 Idaho 207, 209, 76 P.3d 951, 953 (2003). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Taylor v. Taylor*, 163 Idaho 910, 916, 422 P.3d 1116, 1122 (2018) (citing I.R.C.P. 56(a)).

*Gomez v. Crookham Co.*, 166 Idaho 249, 457 P.3d 901, 905 (2020). "The interpretation of a statute is a question of law over which this Court exercises *de novo* review." *Robison*, 139 Idaho at 210, 76 P.3d at 954 (citation omitted).

"This Court will liberally construe the worker's compensation statutes to serve the scheme's humane purposes." *Kennedy v. Forest*, 129 Idaho 584, 587, 930 P.2d 1026, 1029 (1997) (citation omitted).

## III.    ANALYSIS

### A. The district court erred in concluding that TRC is Kelly's category one statutory employer.

In granting summary judgment, the district court concluded that TRC was Kelly's statutory employer under Idaho Code section 72-102(13)(a) because TRC implicitly paid the costs of delivery services as part of its purchase of the metal tubing and because delivery of the tubing was part of the contract. The district court relied on *Spencer v. Allpress Logging, Inc.*, 134 Idaho 856, 11 P.3d 475 (2000), in reasoning that the Idaho Worker's Compensation Act applies to contracts involving the provision of both goods and services.

On appeal, the gravamen of the Kellys' argument is that the district court erred in determining that TRC had contracted for Kelly's services because the contract between Brown Strauss and TRC was primarily a contract for goods, not one for services. The Kellys contend that

4

the delivery term "F.O.B. DELIVERED" in the contract does not render the contract one for services. The Kellys also argue that the district court incorrectly relied on *Spencer v. Allpress Logging, Inc.*, to determine that the Idaho Worker's Compensation Act applied to hybrid contracts involving both goods and services, and point to several other cases they argue are more analogous.

The Idaho Worker's Compensation Act provides a statutory system by which employees are guaranteed "a definite remedy for injuries arising out of and in the course of employment." *Robison*, 139 Idaho at 209, 76 P.3d at 953 (citing I.C. § 72-201). The Act also limits the liability of direct employers. *See* I.C. § 72-209(1); I.C. § 72-211. This is referred to as the "exclusive remedy" rule. *Robison*, 139 Idaho at 209, 76 P.3d at 953.

This Court has described the exclusive remedy rule as affording broad immunity to those falling under the definition of a "statutory employer." *Richardson v. Z & H Constr., LLC*, 167 Idaho 345, 353, 470 P.3d 1154, 1162 (2020). Accordingly, interpreting the applicability of the exclusive remedy rule requires us to analyze whether a specific entity is a "statutory employer" of the injured worker. *See Robison*, 139 Idaho at 211, 76 P.3d at 955.

Idaho Code section 72-223 makes it clear that the exclusive remedy rule does not affect an employee's ability to recover damages from certain third parties. *See* I.C. § 72-223. "Even if an injured employee is entitled to compensation under the Worker's Compensation Law, a third party may still have legal liability to the injured person. I.C. § 72-223(1). The statute specifically excludes certain employers from third party liability." *Fuhriman v. State, Dep't of Transp.*, 143 Idaho 800, 804, 153 P.3d 480, 484 (2007). There are two categories of these excluded employers, the first of which is implicated here. *See* I.C. § 72-223(1). "Category one" statutory employers are employers described in Idaho Code section 72-216(1) as "having under them contractors or subcontractors" who provide worker's compensation insurance. *See id.* Idaho Code section 72-216 declares that

> [a]n *employer* subject to the provisions of this law shall be liable for compensation to an employee of a contractor or subcontractor under him who has not complied with the provisions of section 72-301 in any case where such employer would have been liable for compensation if such employee had been working directly for such employer.

I.C. § 72-216(1) (italics added).[3]

---

[3] While the "category two" statutory employer definition is not part of this appeal, category two has been referred to as the "virtual proprietor" category and is defined in the second half of Idaho Code section 72-223(1): "the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on, but who,

In turn, "employer" is defined as

any person who has expressly or impliedly hired or contracted the *services* of another. It includes contractors and subcontractors. It includes the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workers there employed.

I.C. § 72-102(13)(a) (italics added).

The statutory analysis of "category one" employers involves an examination of "the contractual employment relationship between the parties and whether the direct employer provided worker's compensation coverage." *Pierce v. Sch. Dist. # 21*, 144 Idaho 537, 539, 164 P.3d 817, 819 (2007). "In determining whether a party is immune to an I.C. § 72-223 third party liability suit, we 'look to the previously established statutory definition of "employer" found in [I.C. § 72-102(13)(a)], as interpreted by this Court.'" *Fuhriman*, 143 Idaho 800, 804, 153 P.3d 480, 484 (2007) (quoting *Venters v. Sorrento Delaware, Inc.*, 141 Idaho 245, 249, 108 P.3d 392, 396 (2005)) (alteration in original).

This Court has never addressed the narrow question raised here: whether contracts for goods with ancillary delivery services can create a "category one" statutory employer relationship. However, this Court has, on prior occasions, addressed aspects of contractual relationships that are consistent with the statutory employer definition. For example, contracts that include the sale of goods *and* provision of services are within the scope of the "statutory employer" definition. *See Spencer v. Allpress Logging, Inc.*, 134 Idaho 856, 11 P.3d 475 (2000). In *Spencer*, a landowner contracted with two mills to sell Douglas fir and Ponderosa pine logs. *Id.* at 857, 11 P.3d at 476. As part of the contract, the landowner was required to harvest and deliver the timber, and in turn, the landowner contracted with Allpress Logging to perform these services. *Id.* at 857–58, 11 P.3d at 476–77. During the logging operation, Spencer—an employee of Allpress Logging—was injured. *Id.* at 858–59, 11 P.3d at 477–78. Spencer filed a worker's compensation claim, and the

by reason of there being an independent contractor or for any other reason, is not the direct employer of the workmen there employed." I.C. § 72-223(1); *see also Pierce v. Sch. Dist. No. 21*, 144 Idaho 537, 539, 164 P.3d 817, 819 (2007). In defining the "category two" statutory employer, this Court examines the type of work conducted by the purported employee and the purported employer: "[T]he true test is, [d]id the work being done pertain to the business, trade, or occupation of the [putative statutory employer], carried on by it for pecuniary gain? If so, the fact that it was being done through the medium of an independent contractor would not relieve the defendant from liability." *Harpole v. State*, 131 Idaho 437, 440, 958 P.2d 594, 597 (1998) (quoting *Jones v. Packer John Mines Corp.*, 60 Idaho 653, 95 P.2d 572 (1939)) (alterations in original).

Industrial Commission eventually entered an order holding that one of the mills was not Spencer's statutory employer and, therefore, not liable for his worker's compensation benefits. *Id.* at 859, 11 P.3d at 478. This Court reversed the Commission's holding, reasoning that the mill had contracted with the landowner for the purchase of the logs, and it ultimately paid for the harvesting and delivery services, so the mill "was contracting with [the landowner] for *logging the pine* [sic] *on the property*." *Id.* at 861, 11 P.3d at 480 (italics added). Notably, the *services* provided as part of the contract were not limited to delivery of the logs; they also included harvesting the logs being transported. *See id.*

Today we reject the notion that any conceivable service ancillary to a contract for the sale of goods automatically brings that contract within the scope of the definition of the "category one" statutory employer. This Court has described the immunity provided by the exclusive remedy rule as a "quid pro quo" in exchange for the statutory employer's assumption of liability for worker's compensation benefits. *See Venters*, 141 Idaho at 251, 108 P.3d at 398. The quid pro quo contemplates affording the category one employer immunity from an action in tort in exchange for its acceptance of responsibility for providing worker's compensation benefits in the event the worker has no worker's compensation benefits.

We are not alone in our view. The U.S. District Court of the Western District of Kentucky observed:

> The rule that the mere recipient of goods is not a statutory contractor[4] makes a great deal of sense. To apply workers' compensation statutes to the ordinary sale of merchandise would significantly disrupt and change commerce and business dealings. Classifying mere purchasers of goods as "contractors" simply because they use the purchased goods stretches the immunity provisions of the workers' compensation laws far beyond their intent and the limits of reason.

*Davis v. Ford Motor Co.*, 244 F. Supp. 2d 784, 788 (W.D. Ky. 2003) (applying Kentucky law) (citations omitted). In the last century, multiple states have examined the interaction between their

---

[4] While Kentucky uses the phrase "statutory contractor" instead of "statutory employer," the two phrases are roughly equivalent when comparing the worker's compensation laws of Kentucky and Idaho. Under Kentucky law, a party who is not a traditional employer may still enjoy tort immunity under the exclusive remedy rule if it qualifies as a "contractor" who is "up the ladder" from the injured employee. *See Goldsmith v. Allied Bldg. Components, Inc.*, 833 S.W.2d 378, 381 (Ky. 1992); *see also* K.R.S. §§ 342.610(2)(b) and 342.0011(34). Kentucky's definition of "contractor" uses the term "work," which is narrowly defined to include services. *See* K.R.S. § 342.0011(34). Likewise, in Idaho the category one statutory employer must establish that it meets the definition of "employer" and has under it contractors subject to and compliant with the worker's compensation laws. *See* I.C. § 72-223; *see also* I.C. § 72-216. Kentucky's use of "services" in defining a contractor echoes that of Idaho Code section 72-102(13)(a), which uses "services" in defining an employer. *See* I.C. § 72-102(13)(a).

worker's compensation schemes and the provision of delivery services ancillary to the purchase of goods, and have adopted what the Supreme Court of Kansas described in 1967 as the "general rule": "'The compensation act does not apply where the transaction between the immediate employer and the person sought to be held liable as his employer is that of purchase and sale[.]'" *Bendure v. Great Lakes Pipe Line Co.*, 433 P.2d 558, 564 (Kan. 1967) (quoting Corpus Juris Secundum *Workmen's Compensation* § 107 (1967)). There are two notable exceptions to this rule: when the contract to sell is accompanied by an undertaking to render substantial services in connection with the goods sold, or where the transaction is a mere device or subterfuge to avoid liability under the state's worker's compensation laws. *Id.* States adopting this "general rule" include Arkansas, Georgia, Kansas, Louisiana, Michigan, Nebraska, South Carolina, and Virginia. *Bros. v. Dierks Lumber & Coal Co.*, 232 S.W.2d 646, 650 (Ark. 1950); *Gray Bldg. Systems v. Trine*, 391 S.E.2d 764 (Ga. 1990); *Bendure*, 433 P.2d at 564; *Hart v. Richardson*, 272 So. 2d 316, 319 (La. 1973); *Hooks v. Wayne Cnty. Rd. Comm'rs*, 76 N.W.2d 9, 12 (Mich. 1956); *Heider v. Stoughton*, 35 N.W.2d 814, 815 (Neb. 1949); *Meyer v. Piggly Wiggly No. 24, Inc.*, 527 S.E.2d 761 (S.C. 2000); *Yancey v. JTE Constrs., Inc.*, 471 S.E.2d 473 (Va. 1996).

Accordingly, we now adopt the "general rule." Delivery services ancillary to a contract for the sale of goods do not in and of themselves create a category one statutory employer contractual relationship, except when the contract to sell is accompanied by an undertaking to render substantial services in connection with the goods sold, or where the transaction is a mere device or subterfuge to avoid liability under the Idaho worker's compensation laws. In applying this rule to these facts we conclude that the sales contract between TRC and Brown Strauss did not create a "category one" statutory employer relationship such that TRC is entitled to immunity from suit by the Kellys that would be afforded by the exclusive remedy rule. The contract at issue in this case is a contract for the sale of goods in which the only conceivable "service" is their delivery.[5] There is no mention of "services" in the contract. The contract deals exclusively with the sale of goods. Consequently, there is nothing to suggest the contract included "substantial services" to be provided by Brown Strauss (or its independent sub-contractor, Kelly). There is also nothing to

---

[5] The only term in the contract referencing delivery is the "F.O.B." term. Under the UCC, the "F.O.B." delivery term is used to delineate which party bears the expense and risk of transporting the goods, and at what point liability and title to goods transfer to the buyer. *See* I.C. § 28-2-319(1). When the term "F.O.B. DELIVERED" is used, "the seller must at his own expense and risk transport the goods to that place and there tender delivery of them in the manner provided in [section 28-2-503.]" *Id.*

suggest the contract between Brown Strauss and TRC was a device or subterfuge to avoid liability. (In fact, Kelly received worker's compensation benefits as a result of his injuries.) It represented a routine commercial transaction for the sale of metal tubing.

This contract is also readily distinguishable from that found in *Spencer v. Allpress Logging*. There, the contract apparently included the felling, skidding, limbing, and loading of logs at the site of their harvesting, as well as trucking them to the lumber mill. 134 Idaho at 857, 11 P.3d at 476. As a result, the contract in *Spencer* included "substantial services," thereby distinguishing it from the contract between TRC and Brown Strauss. In addition, the terms of the Brown Strauss contract stated the purchased goods were sold "F.O.B. DELIVERED" meaning title to the goods was retained by Brown Strauss until the goods were delivered to and accepted by TRC. The services necessary for the completion of the contract were incidental in relation to the gravamen of the contract, which was the sale of goods. There is nothing in this record to suggest Kelly contracted to or was employed to physically *unload* the semi he had driven to Idaho Falls from California. Kelly was not operating the telehandler when he was injured.

Were we to agree with TRC's construction of the statute, a driver, working as an independent contractor for a meal delivery service, such as Uber Eats, DoorDash, or any other delivery provider, such as Amazon, would be able to obtain workers compensation benefits from the person ordering that delivery because the person ordering the delivery would become the category one employer of the deliverer if the delivery person did not have worker's compensation insurance. Suppose the delivery person was injured while driving to the purchaser's house. The question arises: would the purchaser be liable for worker's compensation benefits for the driver if the driver lacked worker's compensation insurance? If we conclude TRC is a statutory employer under these facts, the answer would be "yes." While the purchaser might enjoy immunity from suit in tort, the quid pro quo for such a finding would mean the purchaser would be liable for worker's compensation benefits in the event the delivery person has no applicable worker's compensation insurance. Contrary to TRC's characterization, such a holding would inevitably constitute a "sea change," especially in light of the significant development in delivery services prompted by the coronavirus pandemic.

The district court made no other findings on which we may affirm its grant of summary judgment. Accordingly, we reverse the district court's decision to award TRC summary judgment, vacate the judgment entered, and remand for further proceedings. Because neither exception to the

9

general rule are applicable here, we determine as a matter of law that TRC is not Kelly's category one employer. (There is nothing in the contract or this record to suggest Brown Strauss (or its independent contractor) was contracted to perform "substantial services" as part of the contract. Nor is there any suggestion that the contract was entered into as a subterfuge to avoid worker's compensation benefits, since Kelly obtained worker's compensation benefits as a result of his injury.) As a result, TRC is foreclosed from asserting it is Kelly's category one employer on remand.

## IV. CONCLUSION

For the reasons stated, we reverse the district court's grant of summary judgment, vacate the judgment entered, and remand the matter for further proceedings, because TRC is not Kelly's "category one" statutory employer. Costs are awarded to the Kellys since they prevailed on appeal.

Chief Justice BEVAN, Justices BURDICK, BRODY, and MOELLER CONCUR.