IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 37069

| CLARICE L. MINER, | ) | 2011 Unpublished Opinion No. 337 |
| | ) | |
| Plaintiff/Counterdefendant/ | ) | Filed: January 27, 2011 |
| Respondent/Cross-Appellant, | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| v. | ) | |
| | ) | THIS IS AN UNPUBLISHED |
| GARY B. MINER, | ) | OPINION AND SHALL NOT |
| | ) | BE CITED AS AUTHORITY |
| Defendant/Counterclaimant/ | ) | |
| Appellant/Cross-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Kathryn A. Sticklen, District Judge; Hon. Russell A. Comstock, Magistrate.

District court's appellate decision affirming magistrate court's judgment in divorce case, affirmed in part, reversed in part, and case remanded.

M. Karl Shurtliff, Boise, for appellant.

Stoppello & Kiser, Boise, for respondent. Frank W. Stoppello argued.

---

LANSING, Judge

Following a bench trial, the magistrate court granted Clarice Miner and Gary Miner a divorce and entered an order dividing the parties' property. Both parties appealed to the district court, challenging the property division. The district court affirmed. Gary now appeals, and Clarice cross-appeals, to this Court.

## I.

## BACKGROUND

The parties were married in July 1983. Clarice filed for divorce in September 2006, and a bench trial was conducted to resolve the parties' disputes concerning the appropriate division of their property. Neither party was satisfied with the magistrate's disposition, and both appealed to the district court, challenging the property division. The district court affirmed. Gary now appeals, and Clarice cross-appeals, to this Court. At issue is the valuation of certain

1

real property, the existence of certain claimed indebtedness, and the magistrate court's disposition of Clarice's complaints of discovery violations by Gary.

## II.

## ANALYSIS

In an appeal from a decision of the district court rendered in its appellate capacity, we review the decision of the district court directly. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008); *Nicholls v. Blaser*, 102 Idaho 559, 561, 633 P.2d 1137, 1139 (1981). We examine the record before the magistrate, however, to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Id*. Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion. *Bradford v. Roche Moving & Storage, Inc.*, 147 Idaho 733, 736, 215 P.3d 453, 456 (2009); *Carter v. Carter*, 143 Idaho 373, 378, 146 P.3d 639, 644 (2006); *Bouten Const. Co. v. H.F. Magnuson Co.*, 133 Idaho 756, 761, 992 P.2d 751, 756 (1999).

An appellate court reviews a lower court's disposition of property in a divorce action, including valuation and division, for an abuse of discretion, and the disposition will not be disturbed on appeal if supported by substantial competent evidence. *Chandler v. Chandler*, 136 Idaho 246, 249, 32 P.3d 140, 143 (2001); *Maslen v. Maslen*, 121 Idaho 85, 88, 822 P.2d 982, 985 (1991). When a trial court's discretionary decision is reviewed on appeal, the appellate court inquires into whether the lower court correctly perceived the issue as discretionary, acted within the boundaries of such discretion and consistently with applicable legal standards, and reached its decision by an exercise of reason. *Stewart v. Stewart*, 143 Idaho 673, 677, 152 P.3d 544, 548 (2007); *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

## A.     Life Estate in the Amity Property

During their marriage, the parties resided on property on Amity Road in Ada County (the Amity property). This property encompasses twenty-nine acres and was purchased by the parties from Clarice's mother, Helen Garoutte, who continued to live in a separate house on the property. On appeal Gary contends that the magistrate's determination that the parties' interest in the Amity property was subject to a life estate in favor of Garoutte is not supported by substantial evidence.

2

The magistrate court found that the Amity property was conveyed to the Miners by an instrument dated July 9, 1993--but notarized in August of 1997--in which Garoutte retained a life estate. This instrument, labeled an "indenture," was in the form of a deed and stated that Garoutte was conveying to Clarice and Gary:

> all of the following described real estate situated in Meridian, County of Ada, State of Idaho, to-wit.
> See Attached 2 Parcels "A" and "B"
> Grantor, as resident of said property, hereby reserves a "Life Estate Interest."

The "attached 2 parcels" describe the Amity property. Other documents, including a Mortgage and Security Agreement dated July 19, 1993 (the mortgage), indicated the purchase price was $160,000, of which $4,000 was paid on execution of the agreement, and the balance would be paid with 6 percent interest and secured by the mortgage to Garoutte.[1] The mortgage also stated that Garoutte's residence on the Amity property would not be transferred until she no longer lived there and an additional $72,700 had been paid:

> [T]he building built in 1992 as the Mortgagee's personal residence, will not be conveyed to Mortgagors until such time the Mortgagee no longer resides in such residence and an additional sum of Seventy two thousand seven hundred dollars is paid in cash or contract to Mortgagee or her successors.

At trial, Clarice presented the testimony of a professional appraiser, who opined that the value of the Amity property, as diminished to account for Garoutte's life estate, was $1,445,000. The magistrate court adopted this value and awarded the Amity property to Clarice in the divorce decree.

Gary argues that the value of the Amity property should not have been diminished for the alleged life estate because there is not substantial and competent evidence to support a finding that a life estate was retained by Garoutte. He contends that because the Amity property's value is greater than that assigned to it by the magistrate, Gary is entitled to a larger share of the community assets to equalize the division of the community property. The district court held that Gary had not challenged in the magistrate court Clarice's position that the property is burdened by a life estate, and therefore he had waived the issue on appeal. On appeal to this Court, Gary argues that the district court erred in this respect because Gary's claim of error is

---

[1] Attached to the mortgage is an undated Purchase and Sale Agreement signed by all parties stating the same price and payment terms.

3

that the magistrate's finding that a life estate existed was not supported by substantial evidence, an issue that requires no preservation in the lower court.

Generally, issues not raised below may not be considered for the first time on appeal. *Michalk v. Michalk*, 148 Idaho 224, 229, 220 P.3d 580, 585 (2009); *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991). Although an appellant may challenge the sufficiency of evidence to support a trial court's findings without having presented that contention to the trial court, a party may not obtain reversal on appeal for an error that was invited by that party in the trial court. *Thomson v. Olsen*, 147 Idaho 99, 106, 205 P.3d 1235, 1242 (2009); *Vendelin v. Costco Wholesale Corp.*, 140 Idaho 416, 433, 95 P.3d 34, 51 (2004); *State v. Caudill*, 109 Idaho 222, 226, 706 P.2d 456, 460 (1985). We agree with the district court's determination that Gary did not dispute (indeed he acknowledged) the existence of a life estate at trial.

During his cross-examination of Garoutte and Clarice, Gary did not ask any questions concerning the validity of the claimed life estate, and he did not question its validity in his own testimony. During cross-examination of the Amity property appraiser, Gary asked questions challenging the value and scope of the life estate, but not its existence. In fact, during a discussion concerning Gary's opinion that the Amity property should be sold and the proceeds split between him and Clarice, Gary expressly stated that any sale would be subject to Garoutte's life estate and that "they would have to discount that." During his discovery deposition, Gary did state that the life estate covered only Garoutte's house, and this transcript was admitted as an exhibit at trial. However, this assertion--buried in hundreds of pages of deposition transcripts--is insufficient to raise an issue before the trial court where Gary did nothing to direct the court's attention to it and there is no indication in the record that Gary took this same position at trial. Gary cannot now claim on appeal that the magistrate court erred in finding that a life estate existed when the magistrate court was not asked to make a contrary determination by Gary, was not presented with any testimony at trial--or directed to any prior deposition testimony--that would support a contrary determination, and was invited to make the finding by Gary's affirmative recognition of the existence of the life estate.

Even if preserved for appeal, Gary's claim fails on its merits. It is predicated on the contention that the instrument purporting to retain a life estate was executed long after Garoutte had already conveyed the property to Gary and Clarice. The record, however, does not support this contention. Gary contends that the instrument by which Garoutte conveyed her property to

4

Gary and Clarice was the mortgage dated July 19, 1993, not the indenture dated July 9, 1993. Gary's rationale for this argument is that the indenture was "signed" in 1997, and therefore is invalid as it purported to convey the property four years after the mortgage had already conveyed it. However, the 1997 date on the indenture does not purport to be the date of signature but only the date on which Garoutte's signature was "acknowledged" before a notary public. The acknowledgement recites that on August 3, 1997, Garoutte appeared before the notary public "and acknowledged to [the notary] that she executed the same." Signatures may be acknowledged any time after they are affixed, and the acknowledgement here is silent concerning the date upon which Garoutte actually executed the document. The indenture itself is dated July 9, 1993, and Gary has not directed this Court to any evidence in the record indicating that the notary date was the date on which Garoutte executed the document, as opposed to the July 9, 1993, date. Because the indenture document reserves a life estate in Garoutte and is dated July 9, 1993, it constitutes substantial and competent evidence that a life estate was reserved by Garoutte, and the magistrate court did not err in so finding.

B.      Mortgage Debt on the Amity Property

Gary next argues that the magistrate court erred in finding that the unpaid balance of the mortgage on the Amity property was $162,000. At trial, Gary contended that the mortgage balance was $22,000, while Clarice contended that it was $162,000. This disparity resulted from a dispute as to whether Garoutte had waived the interest on the debt. The magistrate court found that Garoutte did not waive her right to interest.

The terms of the agreement stated that Gary and Clarice would pay interest to Garoutte at the rate of 6 percent per annum, but that the interest "may be waived annually." Gary conceded that Garoutte never affirmatively waived her right to interest in accordance with the terms of the agreement, i.e., waived the interest annually. Rather, he said that he was under the impression when the mortgage was signed that Garoutte would not charge interest. Clarice testified that there had been no interest waiver. Because witness credibility is a determination for the trial court, *Beckstead v. Price*, 146 Idaho 57, 62, 190 P.3d 876, 881 (2008), the trial court here was within its discretion in finding Clarice's testimony was more credible than Gary's, especially given the actual language of the agreement and Gary's testimony that Garoutte had not annually waived interest. Thus, substantial and competent evidence supports the magistrate court's determination that the balance owed on the mortgage was $162,000.

5

The court's statement that the Amity property was awarded to Clarice "subject to" the mortgage debt does not indicate, as Gary asserts, that Clarice was to absorb the debt such that it would not be deducted from the net value of the property she was awarded in the property distribution. To the contrary, the "subject to" phrase indicates the opposite; it is an acknowledgement that the value of the property was diminished by various encumbrances, which were properly taken into account in the property distribution. Likewise, the magistrate court's reference to the mortgage as "unliquidated" does not support Gary's contention that the court erred in including accrued interest in the balance owed on the mortgage. From the context of the court's statement, it is apparent that the comment referred to the fact that, as between Garoutte and the Miners, the balance owed was unresolved because Garoutte's pending foreclosure action was not concluded. That a debt is unliquidated as between the Miners and a third person who is not before the court, does not restrain the court from allocating the debt between the parties. The magistrate did so based on substantial and competent evidence of the unpaid balance of the debt.

## C.      Credit Card Debt

At trial, both parties admitted exhibits detailing their requests as to how the court should divide the marital property. These documents presented substantive evidence of each party's opinion on the character and value of the listed items and also presented their distribution proposals. Clarice's proposed distribution exhibit listed a credit card debt of $29,610 accrued by Gary. Clarice testified at trial, however, that this figure was likely incorrect in light of late-disclosed documents to which she had no access when she initially prepared the distribution proposal. She said that the value might again change depending on what Gary presented at trial. Clarice also introduced another exhibit concerning credit card debt that did not include the $22,610 debt now asserted by Gary. Gary testified at trial that he owed approximately $30,000 in debts but could not detail how much of the $30,000 was credit card debt without reading from a document to which Clarice's objection was sustained. He did not detail for what purposes that debt was incurred, and did not admit authoritative supporting documentation. Gary argues that Clarice's proposed distribution exhibit was uncontroverted evidence that Gary owed a credit card debt of $22,610 which was not taken into account in the property division.

We conclude that the trial court permissibly determined that the $22,610 credit card debt did not exist. Given the admitted unreliability of Clarice's Exhibit 1 with respect to Gary's credit card debt--which is the sole "substantial and competent evidence" upon which Gary

6

relies--and the other testimony and evidence introduced at trial that did not mention a $22,610 debt, the trial court did not err in omitting the alleged debt in the distribution of community property and debts.

**D.    Lien on Automobile**

Clarice's proposed property distribution exhibit also listed a 2004 Buick Century and indicated that there was a $7,000 lien on the vehicle. Gary's proposed distribution exhibit listed the same vehicle, but did not indicate there was any lien. This vehicle was awarded to Gary. Gary now argues that Clarice's proposed distribution exhibit was uncontroverted and indicates that the Buick was burdened by a $7,000 lien. By not finding that this debt existed and accounting for it in the property distribution, Gary argues, the court erred.

Gary is incorrect in asserting that Clarice's proposed distribution exhibit was uncontroverted, for it was contradicted by Gary's own exhibit. The court permissibly found that Gary's evidence that no lien existed on the car was more authoritative than Clarice's, for Gary admitted that he knew of no debts other than those listed on his exhibit. Clarice, however, stated in closing argument that she assumed the lien was still in existence when she made her exhibit but that Gary's numbers should be relied on, implying that he was the party with access to financial information on the Buick. Therefore, the court did not err in determining that the more authoritative evidence on the matter of the lien was Gary's proposed distribution exhibit and his testimony.

**E.    $72,700 Deduction from Value of the Amity Property**

In her cross-appeal, Clarice argues that the trial court erred in determining the net value of the Amity property because the court included the full value of Garoutte's residence on the property, whereas Clarice will have to pay an additional $72,700 in order to acquire that residence.

As noted above, two documents, the indenture and the mortgage, comprise the transaction by which the Amity property was conveyed to Clarice and Gary. While the indenture reserved a life estate to Garoutte in the entire Amity property, the mortgage contained another provision exempting from the transaction the house in which Garoutte resided. It stated that "the building built in 1992 as the Mortgagee's personal residence, will not be conveyed to the Mortgagors until such time as the mortgagee no longer resides in such residence and an additional sum of $72,700 is paid in cash or contract to Mortgagee or her successors." The

appraisal that the trial court accepted as the value of the Amity property encompassed all of the property, including Garoutte's house. On appeal, Clarice argues that the magistrate court erred in rejecting her position that the appraised value should be reduced by the sum of $72,700, which will have to be paid before Clarice could acquire the house. Clarice characterizes this as a $72,700 indebtedness owed on the Amity property.

Gary responds that this provision in the mortgage and security agreement created no debt burdening the property because it did not obligate the Miners to pay the $72,700 sum. Rather, Gary contends, this provision is nothing more than an option to purchase, not an obligation that must be paid.

While we agree with Gary's characterization that this provision appears to be more in the nature of an option to purchase and does not create a debt secured by the property, we nevertheless agree with Clarice's point that the appraised value of the property must be reduced by this sum. Because the appraised value of the Amity property adopted by the court included the value of Garoutte's house, and because the additional sum must be paid before the appraised value could be realized, the court erred by failing to reduce the appraised value by $72,700. The effect of this adjustment upon equalization of the property distribution must be considered by the magistrate court on remand.

Gary also contends that no adjustment in the property valuation for this provision is required because the appraised value adopted by the court already discounted the value of the Amity property by the amount of $276,009 for the life estate that was retained by Garoutte in the entire parcel. This argument is without merit, for it conflates the life estate retained in the indenture with the separate option provision found in the mortgage. These are two separate terms in the same conveyance, not two conflicting versions of the life estate as Gary argues. According to the provision in the mortgage, if Garoutte were to die, Clarice would not acquire the house from Garoutte's estate; Clarice would still have to pay the additional sum. The two terms are not conflicting and do not deal with the same subject matter.

The dissent is of the view that in valuing the Amity property, the magistrate intentionally and properly omitted any adjustment for the exemption of Garoutte's residence and that this Court should affirm that determination, thereby giving no effect to the reservation language in the mortgage. Such a disposition is not appropriate for this appeal, however, because the validity or applicability of the exemption is not an issue that has been litigated by the parties or decided

by the trial court. First, neither the magistrate court's findings and conclusions from the trial nor its order denying Clarice's post-trial motion for reconsideration suggest such a determination; nor do they include any factual finding as to why this exemption should be disregarded for valuation purposes. They simply do not mention the reservation of Garoutte's residence from the transaction. Second, the issue of the validity or effectiveness of the provision exempting the residence from the conveyance has not been raised by either party, either in the trial court or on this appeal. Neither Clarice nor Gary took the position in the trial court that Garoutte had not effectively reserved title to her residence. Clarice consistently asserted that the appraiser's valuation of the property must be reduced by the sum that would have to be paid to acquire the house from Garoutte or her estate. Even on this appeal, Gary does not take a position that the reservation in the mortgage may be disregarded. Indeed, his brief expressly argues:

> Clearly these parties and Mrs. Garoutte believed that the purchase of the Amity property was controlled by the agreement of July 19, 1993 and not by a deed executed by Mrs. Garoutte in 1997. This case was tried on that premise. That premise included the notion that the mortgage and security agreement (Exhibit 5, R.123) established that Mrs. Garoutte had a personal residence on the property and that so long as she remained there and until she or her estate was paid $72,700 it would not be property of the parties.

Appellant's Brief, p. 9. Perhaps because neither party contested that mortgage provision at trial, no evidentiary record was made concerning when the various agreements documenting the transaction were signed in relation to one another, nor was there evidence or argument concerning whether this term in the mortgage should be deemed incorporated into other documents signed by Garoutte. Because the validity of the exemption of Garoutte's residence from the real estate transaction is not an issue that was raised by either party nor decided by the magistrate, we do not consider it here.

## F.     Gary's Noncompliance with Discovery

In November of 2007, Clarice obtained an order compelling discovery responses from Gary and extending the discovery deadline to February 15, 2007. Clarice did not thereafter schedule Gary's deposition until February 13, 2007, two days before the new deadline. At that deposition Gary still refused to turn over certain documents in violation of the court's discovery order. Clarice did not bring this continuing lack of cooperation to the court's attention until the pretrial conference on March 31, 2008. A discovery master had been appointed in December, but Clarice did not attempt to contact the master until April. At that point, the discovery master

was unsure of his authority to act on discovery issues because the February 15 discovery deadline had passed. He therefore contacted the magistrate for guidance. Thereafter, the discovery master sent the following message to the parties:

> I received a copy of the Pre-trial Order in Miner vs Miner from [Clarice] last Friday. However, Judge Comstock has communicated to me that the discovery deadline is past and that his Scheduling Order is clear that motions to compel are to be filed at a certain time prior to the pre-trial date. In my opinion, I am without jurisdiction to consider [Clarice's] discovery issues at this time.

Gary never responded to some of Clarice's discovery requests. Clarice argues on cross-appeal that the magistrate court should have ordered Gary to disclose his income and sums he paid from community income for attorney fees during the parties' separation, which would have allowed the court to divide that income between the parties and determine how much of Clarice's attorney fees should be subject to community reimbursement in the interest of equity.

An appellate court will not disturb a trial court's decision to grant or deny a motion to compel discovery absent a clear abuse of discretion. *Villa Highlands, LLC v. Western Community Ins. Co.*, 148 Idaho 598, 609, 226 P.3d 540, 551 (2010); *Sirius LC v. Erickson*, 144 Idaho 38, 43, 156 P.3d 539, 544 (2007). Although Gary's conduct violating a discovery order is unacceptable, in view of Clarice's own lack of diligence we cannot say that the magistrate court abused its discretion in declining to further compel the discovery upon Clarice's untimely request.

## G. Court's Failure to Consider Gary's Post-Separation Income and Payment of Attorney Fees

Clarice next contends that although Gary's refusal to respond to some discovery requests prevented her from proving all of his post-separation income, she was able to prove a portion of his income during the period of the parties' separation and that the trial court erred in failing to consider that income retained by Gary in the court's property division. Clarice is correct in her contention that the trial evidence establishes that Gary earned at least $21,000 during separation and before divorce. It does not appear that the magistrate court took into account this $21,000 in the property division. Because income earned after separation but before divorce is community property and must be divided accordingly, *see Suter v. Suter*, 97 Idaho 461, 466, 546 P.2d 1169, 1174 (1976), this was error. Therefore, a corrective adjustment to the property division should be made on remand.

Clarice's claims regarding Gary's payment of attorney fees, on the other hand, were not as clearly proven. Clarice incorrectly asserts that Gary unambiguously testified that his attorney fees were paid from community property. Gary testified at trial that he paid some of his attorney fees from income and some from money he borrowed, and some were still unpaid. Because Clarice was unable to establish the amount of community income expended by Gary on attorney fees, she failed to support her claim for community reimbursement of her attorney fees as an equitable balancing remedy.

## H.      Clarice's Request for Sanctions for Gary's Discovery Violations

The magistrate court's November 26, 2007, order granting Clarice's motion to compel discovery ordered that "Plaintiff's Motion for sanctions in the nature of Plaintiff's attorney's fees and costs herein is hereby held in abeyance by the Court. . . . [I]f Defendant fails to comply with this Order, he shall be subject to sanctions pursuant to I.R.C.P. 37(b)." Even though the trial revealed multiple violations of the discovery order, and Clarice in her closing argument requested that the sanctions that had been held in abeyance be imposed, the magistrate court did not address the issue. Clarice argues that the magistrate erred in failing to award sanctions in the form of attorney fees and costs because Gary did not comply with the court's order and Clarice's valid discovery requests.

The district court on intermediate appeal concluded that the magistrate did address the issue. The district court was incorrect, however, for the magistrate's findings address only Clarice's request for attorney fees as a form of equitable community property distribution, not her request for attorney fees as a discovery sanction. The record does not show any disposition of Clarice's request for sanctions.

Generally, an issue will not be considered on appeal unless the record shows an adverse ruling that forms the basis for an assignment of error. That principle does not apply, however, where the trial court failed to rule on an issue despite a party's diligent efforts to obtain a ruling. *See Kolar v. Cassia County Idaho*, 142 Idaho 346, 354, 127 P.3d 962, 970 (2005) (holding that because the district court had never ruled on the issue being raised on appeal, the next inquiry was whether the issue was properly raised because "[t]o properly preserve an issue for appeal, the [sic] one must either receive an adverse ruling on the issue *or* raise it in the court below." (emphasis added)). In this case, Clarice unambiguously and thoroughly presented her request for

11

discovery violation sanctions, first in her motion to compel discovery and later in her written closing argument. Therefore, we will consider this issue on appeal.

There is ample evidence in the record that Gary refused to respond to Clarice's discovery requests even after the court ordered him to do so. Therefore, in view of the magistrate court's order that Gary would be subject to sanction if he failed to comply with its order, the court erred in not further addressing this issue. The nature of such sanction, if any, is for the magistrate court to determine on remand.

## I.      Attorney Fees on Appeal

Clarice argues that she is entitled to attorney fees because Gary's appeal is frivolous and without foundation as it does not present any meaningful issue of law, attempts to raise issues that were not preserved, and merely asks this Court to second guess the trial court's factual findings.

An award of attorney fees may be granted under Idaho Code § 12-121 and I.A.R. 41 to the prevailing party if the Court is left with the abiding belief that the appeal has been brought or defended frivolously, unreasonably, or without foundation. *Rendon v. Paskett*, 126 Idaho 944, 945, 894 P.2d 775, 776 (Ct. App. 1995). We conclude that Gary's appeal and defense of Clarice's cross-appeal were not entirely frivolous or unreasonable. Indeed, he prevailed in part on Clarice's cross-appeal. Therefore, no attorney fees will be awarded. However, because Gary did not prevail on any of his claims of error, and Clarice prevailed in part on her cross-appeal, we award Clarice costs pursuant to I.A.R. 40(a).

### III.

### CONCLUSION

The magistrate court erred in failing to account for the $72,700 "option" provision when determining the value of the Amity property and in failing to include in community property the sum of $21,000 earned by Gary during the parties' separation. We also find error in the magistrate court's failure to address Clarice's request for an award of sanctions for Gary's continued refusal to comply with the court's discovery order. We therefore affirm in part and reverse in part the decision of the district court and remand for further proceedings consistent with this opinion. Costs to respondent/cross-appellant.

Judge MELANSON **CONCURS.**

12

Chief Judge GRATTON, **CONCURRING IN PART AND DISSENTING IN PART**

I concur in sections II(A), (B), (C), (D), (F), (G), and (I), except for the award of costs to respondent/cross-appellant.

In section II(E), the majority determines that the lower court erred by failing to reduce the appraised value of the real property by $72,700. I disagree. As noted by the majority, there are multiple documents which appear to relate to the transaction by which Ms. Garoutte conveyed the Amity property to the Miners. The first such document is entitled "indenture" and, again as recognized by the majority, is in the form of a deed. This document, together with the legal descriptions attached, purports to convey all of Ms. Garoutte's Amity property, subject to the reservation of a life estate over the entirety of the property. Ms. Garoutte signed this document. The second document is entitled "mortgage and security agreement." Attached to this document are the same legal descriptions attached to the indenture, which do not exempt any of Ms. Garoutte's Amity property. However, the "witnesseth" paragraph of the document, contains the following language "(except the building built in 1992 as the Mortgagee's personal residence, will not be conveyed to Mortgagors until such time the Mortgagee no longer resides in such residence and an additional sum of Seventy two thousand seven hundred dollars is paid in cash or contract to Mortgagee or her successors)." This language ("reservation") purports to reserve some of the real property from the transaction. The document makes no reference to any life estate. The document is not signed by Ms. Garoutte and is in no way in the form of a deed. The third document is entitled "purchase and sale agreement." This document also refers to the legal descriptions of the two parcels which comprise the Amity property and contains no language regarding a life estate or a reservation of certain property from the conveyance. This document is signed by the Miners as well as Ms. Garoutte.

The transaction documents were admitted before the magistrate and discussed at trial. As to the reservation, Ms. Miner testified that it was an "additional sum" due on the property, an "encumbrance," and an amount that would be owed to her mother if she moved or passed away. While not expressly stated in the reservation, it appears that Ms. Miner's contention is that the Miners irrevocably bound themselves to the acquisition of the reserved property upon the occurrence of a condition subsequent for a sum certain (although that is not even the way the majority characterizes the effect of the purported reservation). On appeal, Ms. Miner contends that the value of the property should be reduced by this $72,700 debt. Ms. Miner's own expert

13

appraiser testified that his calculation of the value of the real property was based upon the Miners owning the entirety of the Amity property (without excepting any real property, i.e., the residence, from the calculation) discounted for the existence of a life estate held by Ms. Garoutte over the entire property (without excluding the residence). For his part, Mr. Miner testified that the reservation language did not reflect the intent of the parties. He testified in his admitted deposition that the intent had been to only give Ms. Garoutte a life estate in the residence itself. Alternatively, Mr. Miner contends that the reservation language amounts to no more than an option to purchase the real property reserved from the transaction at some time after Ms. Garoutte moves or passes away, which would be at Ms. Miner's election and expense if she chose to exercise the option.

The magistrate was aware of the disputed testimony above and, in the findings of fact and conclusions of law specifically referenced each of the documents identified above. The magistrate stated that "there are numerous factual issues related to the character, value and division of the parties' real and personal property, as well as the character and amount (sic) their liabilities." The magistrate noted that, because of the Miner's entangled financial interests with Ms. Miner's family that "consequently, Clarice naturally attempted to safeguard her family's interests in this divorce case." The magistrate did not engage in an analysis of the legal sufficiency or validity of the various transaction documents. Instead, the magistrate, whose purpose was to equitably divide the Miners' property, determined that the most credible evidence of the fair market value of the Amity property was that provided by Ms. Miner's expert. The magistrate's determination was based upon a finding that the Miners had been conveyed the entirety of the Amity property subject to a life estate held by Ms. Garoutte on the entirety of the property. Consequently, the magistrate adopted Ms. Miner's expert's valuation. Thus, for purpose of valuing the property as between the Miners, the magistrate declined to make any adjustment for the disputed additional encumbrance asserted by Ms. Miner. This determination is supported by substantial and competent evidence and should not be disturbed on this appeal. *Chandler v. Chandler*, 136 Idaho 246, 249, 32 P.3d 140, 143 (2001). By adopting Ms. Miner's present view of the nature, character and value of the real property, it is the majority that is

14

validating and breathing life into the reservation, which it must do to reach the conclusion that an additional $72,700 must be deducted from the value determined by the magistrate.[1]

I disagree with the majority's conclusions in section II(H) regarding sanctions for discovery violations. It is true that prior to trial the magistrate entered a discovery order and indicated that Mr. Miner would be subject to sanctions pursuant to Idaho Rule of Civil Procedure 37(b) for failure to comply. However, first, the fact that a non-compliant litigant is subject to sanctions does not equate with a predetermination that sanctions would actually be imposed or that those sanctions would be in the form of attorney fees. Second, Ms. Miner did raise the issue of sanctions for discovery abuses in her written closing argument. However, she did not argue a request for sanctions tied to the failure to comply with discovery, but, instead requested an award of all of her attorney fees, $45,846.87, and cited discovery abuses as a ground for such an award. She also requested attorney fees as a community debt. The magistrate "having fully considered the evidence presented at trial and the post-trial written arguments of counsel" rejected an award of attorney fees. The magistrate stated that Idaho Code § 32-704(3) "is the basis on which the court may award attorney's fees in a divorce action." The magistrate was aware of the basis claimed for attorney's fees and declined to award attorney fees. I would uphold the magistrate's determination.

Lastly, in regard to section II(I), I agree that attorney fees on appeal are not warranted, but would also refuse to award costs to any party.

---

[1] As an aside, I would note, that if, indeed, Ms. Garoutte did reserve a portion of the real property from the sale, at the time of trial, the Miners did not own that portion. That it may be acquired, per a 1993 agreement, for $72,700 does not establish the value of that reserved property at the time of trial. Since Ms. Miner was awarded the property, it is possible that her payment of $72,700 (one-half of which is effectively paid by Mr. Miner per the majority decision) would result in an increase in the overall value of the owned property to her well in excess of that amount. She presented no testimony as to the actual value of the reserved property. In addition, Ms. Miner's expert concluded that Ms. Garoutte's life estate covered all of the Amity property. Therefore, the value of the life estate was overstated by inclusion of the reserved property. The magistrate properly reviewed the disputed testimonial and documentary evidence presented and substantial and competent evidence supports the magistrate's valuation decision.