2003 OK 77

**John A. HAMMOCK, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 99,053.**

Supreme Court of Oklahoma.

Sept. 30, 2003.

Micky Walsh, Oklahoma City, for Plaintiff.

Robert G. McCampbell, United States Attorney, Robert A. Bradford, Assistant United States Attorney, Oklahoma City, for Defendant.

BOUDREAU, Justice:

¶1 Pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.2001 §§ 1601–1611, and 10th Cir. R. 27.1, the United States Court of Appeals for the Tenth

Circuit on its own motion certified the following questions of unsettled Oklahoma law:

1.  Does a vendor of merchandise qualify as an "independent contractor" for the retailers it supplies, within the meaning of Okla. Stat. tit. 85, § 11, such that a retailer may potentially assume workers' compensation liability (and *quid pro quo* tort immunity) as a "principal employer" of the vendor's employees?  If the answer depends on the extent to which the vendor contracts to perform substantial services in conjunction with the goods it provides, do the actions of the vendor in this case— delivering, stocking, rotating, inventorying, and promoting the brand of beer it vends—suffice, as a matter of law, to make it the defendant retailer's independent contractor under § 11?

2.  If the vendor here qualifies as the defendant retailer's independent contractor (or if that is not a threshold predicate for assessment of the latter's status as a principal employer under § 11), does the vendor satisfy, as a matter of law, the "necessary and integral" part of [the] business test for workers' compensation coverage set out in *Murphy v. Chickasha Mobile Homes, Inc.*, 611 P.2d 243, 248 (Okla. 1980), and later sharpened by the three-tiered inquiry adopted in *Bradley v. Clark*, 804 P.2d 425, 428 (Okla.1990)?

These questions require us to apply §§ 11–12 of the Oklahoma Workers' Compensation Act, 85 O.S. §§ 1 *et seq.* (the Act), to the facts provided to us by the certifying court.[1]

## I.  FACTS

¶ 2 To place the certified questions in perspective, we briefly recite the facts as provided to us by the certifying court.  Plaintiff, John A. Hammock (Hammock), was employed by Clyde Fisher Inc., d/b/a Southern Sales (Southern Sales), to deliver, stock, rotate, take inventory and promote the sale of Miller beer at a variety of retail stores. Among the stores Southern Sales serviced was the PX at Fort Sill, Oklahoma.  The PX is run by the Army and Air Force Exchange Service (AAFES), an agency of the United States Department of Defense.  On May 1, 1997, while servicing the PX at Fort Sill, Hammock received a shock from an exposed electrical transformer, was knocked from a ladder, and suffered a serious on-the-job injury.  After administrative redress was denied, Hammock sued the United States of America under the Federal Tort Claims Act, claiming the exposed transformer was a dangerous condition and that AAFES breached its duty of care to him as a business invitee to correct or warn of the condition.[2]

¶ 3 AAFES moved for summary judgment claiming it is immune from tort liability to Hammock by virtue of its status under § 12(i) as the "statutory employer" of Southern Sales (which is Hammock's immediate employer).[3]  In response to AAFES' contention, Hammock responded advancing two distinct arguments.  First, he argued that § 12(i)'s extension of immunity to statutory employers is inapposite in the context of this case, which is a vendor/vendee relationship involving the *provision of goods* rather than an independent contractor/hirer relationship

---

**1.**  The defendant United States of America concedes that the Oklahoma Workers' Compensation Act governs this case.  In its brief in support of summary judgment filed in the federal district court, the defendant stated:

> Congress granted States the authority to extend workers' compensation laws to federal lands within the States' boundaries.  40 U.S.C. § 290 (now 40 U.S.C. § 1372); *Begay v. Kerr-McGee Corp.*, 682 F.2d 1311, 1319 (9th Cir. 1982).  Oklahoma specifically accepted this grant of authority and extended its workers' compensation jurisdiction to include federal lands.  85 O.S. § 4. Therefore, the Oklahoma Workers' Compensation Act governs this accident even though it occurred on federal land, Fort Sill.

**2.**  Although the named defendant is the United States of America, for purposes of simplification in this opinion we will refer to the defendant as AAFES.

**3.**  For purposes of simplification, hereinafter we use the term "statutory employer" instead of "principal employer".  In previous opinions we have consistently used the term "statutory employer" to refer to both "principal employer" and "intermediate employer" as those terms are used in §§ 11–12.  A "statutory employer" is one who is secondarily liable for compensation to its independent contractor's employees.  *Beall v. Altus Public School Dist.*, 1981 OK 93 n. 1, 632 P.2d 400, 404 n. 1.

involving *the performance of services.* Second, he argued that even if § 12(i)'s extension of immunity is applicable in the context of a vendor/vendee relationship, the facts of this case demonstrate that AAFES does not satisfy the requirements necessary to be deemed the statutory employer of Southern Sales.

## II. ANSWERS TO THE CERTIFIED QUESTIONS

¶ 4 We answer the first certified question as follows. A vendor of merchandise does not qualify as an independent contractor for the vendee it supplies within the meaning of 85 O.S. § 11 such that a retailer may potentially assume workers' compensation liability (and *quid pro quo* tort immunity) as a "principal employer" of the vendor's employees. Further, we conclude that the actions of the vendor in this case (delivering, stocking, rotating, inventorying, and promoting Miller beer at the PX), do not make it AAFES' independent contractor under § 11.

¶ 5 We decline to answer the second certified question because Southern Sales is not an independent contractor of AAFES and because that relationship is a threshold predicate for assessing AAFES' status as a principal employer under § 11.

## III. APPLICABLE LAW

¶ 6 Both §§ 11 and 12 of Title 85 are at issue. Relevant to this opinion (and vastly over-generalized), § 11 imposes on most employers compensation liability for accidental on-the-job injuries suffered by their workers without regard to fault, and § 12 gives those employers immunity from tort liability arising out of such injuries. On the date of Hammock's injury (May 1, 1997), § 11 provided in pertinent part:

A. Every *employer* subject to the provisions of the Workers' Compensation Act shall pay, or provide as required by the [Act], compensation ... for the disability ... of an employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of employment, without regard to fault as a cause of such injury....

B. Liability ... when *other than the immediate employer* of the injured employee, shall be as follows:

1. *[T]he principal employer shall also be liable ... for compensation due ... employees of [its] independent contractors ....*

(emphasis added).[4]

On the date of Hammock's injury, § 12 provided in pertinent part:

The [workers' compensation] liability prescribed in Section 11 of this title *shall be exclusive and in place of all other liability* of the employer and any of his employees ... at common law or otherwise ...; provided:

(i) the immunity created by ... this section [12] shall not extend to [an] action by an employee ... against *another employer* ... on the same job as the injured ... worker ... where such *other employer* does not stand in the position of [a] ... *principal employer* to the immediate employer of the injured ... worker.

(emphasis added).[5]

¶ 7 We paraphrase the effect of §§ 11 and 12 as they apply to this opinion.

(a) The immediate employer of a worker injured on the job is liable for compensation for that worker's injuries and therefore is immune from tort liability asserted by the injured worker.

(b) As a general rule, any *other* employer on the same job as the injured worker is *not* liable for compensation under the Act for that worker's injuries and therefore is *not* immune from tort liability asserted by the injured worker.

(c) However, if another employer on the same job as the injured worker qualifies as the injured worker's "principal employer" (also commonly referred to as a "statutory employer") then such employer *is* liable for compensation under the Act for that work-

---

4. 85 O.S.1991 § 11, as amended by 1993 Okla. Sess. Laws, ch. 349 § 6 (eff.9/1/93) and 1996 Okla. Sess. Laws, ch. 363 § 2 (eff.11/1/96).

5. 85 O.S.1991 § 12.

er's injuries and therefore *is* immune from tort liability asserted by the injured worker.

## IV. DISCUSSION

### A.

**A vendor of goods does not qualify as an independent contractor of the vendee it supplies within the meaning of 85 O.S. § 11, such that a retailer may potentially assume workers' compensation liability (and *quid pro quo* tort immunity) as a "principal employer" of the vendor's employees.**

▇▇▇▇ ¶ 8 Generally, in order to determine whether a hirer may be deemed the "statutory employer" of a hired independent contractor, we apply the three-tier inquiry enunciated in *Bradley v. Clark,* 1990 OK 73, 804 P.2d 425.[6] In this opinion, however, we are asked to decide a preliminary matter: Whether a vendee may be deemed the "statutory employer" of its vendor under § 11.

¶ 9 The first prerequisite for AAFES to be deemed the "statutory employer" of Southern Sales is that the § 11 statutorily prescribed relationship between AAFES and Southern Sales must exist: *i.e.,* Southern Sales must be an independent contractor of AAFES.[7]

▇▇▇▇ ¶ 10 In defining statutory terms, in the absence of specified definitions, the Supreme Court must assume that the Legislature intended for them to have the same meaning as that attributed to them in ordinary and usual parlance. *Loffland Bros. Equip. v. White,* 1984 OK 69, 689 P.2d 311, 314. This court may not expand the plain meaning of words of a statute by construction. *Ridley Packing Co. v. Holliday,* 1970 OK 59, 467 P.2d 480, 482. The words of a statute will not be given a strained meaning, if to do so would defeat the legislative purpose. *Jackson v. Sims,* 201 F.2d 259, 261 (10th Cir.1953).

▇▇▇▇ ¶ 11 There is no definition of the term "independent contractor" as that term is used in the Act. Accordingly, the term retains its common law meaning.[8] The term is usually applied to one who engages to perform a certain service for another (*i.e.* the hirer) according to his or her own method and manner, free from control and direction of the hirer in all matters connected with the performance of the service except as to the result. *Flick v. Crouch,* 1967 OK 131, 434 P.2d 256. The decisive test for determining whether one is an employee or an independent contractor is the existence, or not, of the hirer's right to exercise control over the physical details of the performance of the service. *Id.*

▇▇▇▇ ¶ 12 The term "independent contractor" refers to employees engaged in services or work executed by subcontract. If we were to expand the term to include the relationship of buyer and seller of a commodity or material, we would violate fundamental rules of construction which require that words have the same meaning as that attrib-

---

**6.** The first tier asks whether the work being performed by the independent contractor is specialized or non-specialized. If the work is specialized *per se,* then the hirer is not the statutory employer of the independent contractor. If the work is not specialized *per se,* the second tier asks whether the work being performed by the independent contractor is the type of work that, *in the particular hirer's business,* normally gets done by employees or normally gets done by independent contractors. If the work normally gets done by independent contractors, then the hirer is not the statutory employer of the independent contractor. If the work is normally performed by employees, the third tier focuses on the moment in time the worker was injured, and asks whether the hirer was engaged in the type of work being performed by the independent

contractor *at the time the worker was hurt.* If not, then the hirer is not the statutory employer of the independent contractor.

**7.** The statute by its express terms does not apply to vendor/vendee relationships but rather applies only to employers, independent contractors, subcontractors and other employees engaged in the general employer's business. *See* 85 O.S.1991 § 11(B)(1). In this opinion we focus only on the hirer/independent contractor relationship since that is the context of the certified questions.

**8.** "The growth of the common law in the area of master/servant relationship will not be stunned by legislative silence." *Tate v. Browning–Ferris, Inc.,* 1992 OK 72, 833 P.2d 1218, 1230.

uted to them in ordinary and usual parlance.[9] Whatever activities might render someone an independent contractor, acting as a mere vendor is not one of them. We do not believe the Legislature intended § 11 to apply when the relationship between the injured worker's immediate employer and the entity sought to be held liable in tort as a "statutory employer" is that of vendor/vendee.[10]

### B.

**The actions of the vendor in this case (delivering, stocking, rotating, inventorying, and promoting Miller beer at the PX), do not make it AAFES' independent contractor under § 11.**

¶ 13 Southern Sales contracted with AAFES for the sale and delivery of Miller beer. The work performed by Hammock (Southern Sales' employee) in stocking the shelves and maintaining the Miller display was incidental to the primary purpose of the sales agreement between Southern Sales and AAFES, which was to provide beer for retail sales. The relationship between Southern Sales and AAFES remained one of vendor/vendee, despite the services performed by Hammock.

¶ 14 The facts in this case are virtually identical to those of *Meyer v. Piggly Wiggly No. 24, Inc.*, 338 S.C. 471, 527 S.E.2d 761 (2000). In *Piggly Wiggly*, the court was called upon to determine whether the plaintiff was Piggly Wiggly's statutory employee fro workers' compensation purposes. The plaintiff was a route salesman for a baking company. He delivered cake products from the baking company to various retail stores, including Piggly Wiggly. He ordered products from a master inventory list of products authorized by Piggly Wiggly and he determined the amount to order by evaluating how sales were going over a period of time. On average, he spent about 20-25 minutes in

Piggly Wiggly stocking the baking company's products, pulling stale products, and cleaning up the display. He returned stale products to the baking company. The South Carolina Supreme Court observed that although plaintiff's "stocking and cleaning of the display may have incidentally benefitted Piggly Wiggly, these activities related only to the sale of vendor's goods and were insubstantial in the context of Piggly Wiggly's general business." *Id.* at 763. The court concluded that the relationship between the baking company and Piggly Wiggly remained one of vendor/vendee, not hirer/independent contractor. *Id.*

### C.

#### The second certified question.

¶ 15 For AAFES to be deemed the "statutory employer" of Southern Sales, the 85 O.S. § 11 statutorily prescribed independent contractor relationship must exist. A vendor of goods does not qualify as an independent contractor of the vendee it supplies within the meaning of § 11. Because the relationship between Southern Sales and AAFES remained one of vendor/vendee despite the services performed by Hammock, it is not necessary for us to answer the second certified question.

### V. CONCLUSION

¶ 16 A vendor of merchandise does not qualify as an independent contractor for the vendee it supplies, within the meaning of 85 O.S. § 11, such that a retailer may potentially assume workers' compensation liability (and *quid pro quo* tort immunity) as a "principal employer" of the vendor's employees. The relationship between Southern Sales and AAFES remained one of vendor/vendee, despite the services performed by Hammock in

9. *See Loffland Bros. Equip. v. White*, 1984 OK 69, 689 P.2d 311, 314.

10. Other jurisdictions have so held in construing similar provisions in their workers' compensation acts. *See, e.g., Mobley v. Flowers*, 211 Ga. App. 761, 440 S.E.2d 473 (1994); *Hacker v.*

*Brookover Feed Yard, Inc.*, 202 Kan. 582, 451 P.2d 506 (1969); *Meyer v. Piggly Wiggly No. 24, Inc.*, 338 S.C. 471, 527 S.E.2d 761 (2000); *Wilson v. Daniel Int'l Corp.*, 260 S.C. 548, 197 S.E.2d 686 (1973); *Cork v. Gable*, 340 So.2d 487 (Fla.Dist.Ct.App.1976).

delivering, stocking, rotating, inventorying, and promoting Miller beer at the PX. Because Southern Sales is not an independent contractor of AAFES, and because that relationship is a threshold predicate for assessing AAFES' status as a principal employer under § 11, we need not answer the second certified question.

ALL JUSTICES CONCUR.