FILED<br>
04/26/2024<br>
Clerk of the<br>
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 4, 2024 Session

## BRIAN COBLENTZ ET AL. v. TRACTOR SUPPLY COMPANY

Appeal from the Circuit Court for Lincoln County
No. 2013-CV-85     M. Wyatt Burk, Judge

_____

### No. M2023-00249-COA-R3-CV

_____

JEFFREY USMAN, J., dissenting.

The majority opinion thoughtfully applies existing Tennessee caselaw, concluding that Tractor Supply Company is Mr. Coblentz's statutory employer. This precludes Mr. Coblentz from maintaining his premises liability suit against Tractor Supply due to the exclusive remedy provision of Tennessee's Workers' Compensation Law. My respectful disagreement with the majority's opinion is based upon (1) my view that existing Tennessee caselaw does not appear to have grappled with vendor-vendee relationships when determining statutory employer status, and (2) that the failure to address such circumstances creates an inconsistency with Tennessee's Workers' Compensation Law.

The issue before this court is whether Stanley National is a subcontractor of Tractor Supply. Mr. Coblentz argues that Stanley National is not a subcontractor; therefore, Tractor Supply is not a principal contractor. Tractor Supply insists that it is a principal contractor and that Stanley National is its subcontractor. Reading through the parties' briefing of this matter, it seems as if both sides are trying to push a square peg through a round hole. The reason for the improper fit and the reason it matters that vendor-vendee relationships have not been fully grappled with in Tennessee caselaw become clearer when one considers *Larson's on Workers Compensation*, a leading treatise in the field.[1] Relevant

---

[1] *See, e.g.*, *Fisher v. Halliburton*, 667 F.3d 602, 615 (5th Cir. 2012) (describing *Larson's* "[a]s a leading workers' compensation treatise"); *Brittingham v. St. Michael's Rectory*, 788 A.2d 519, 523 (Del. 2002) (characterizing *Larson's* as "the leading authoritative treatise on the subject"); *Howard Univ. Hosp. v. D.C. Dep't of Emp't Servs.*, 267 A.3d 1068, 1073 (D.C. 2022) (indicating that *Larson's* is "[t]he leading treatise in this area"); *Kawakami v. City & Cnty. of Honolulu Bd. of Water Supply*, 100 Haw. 285, 289, 59 P.3d 920, 924 (2002) (stating of *Larson's* that it is "the leading treatise on worker's compensation"); *Sharp v. Thomas Bros. Plumbing*, 510 P.3d 1136, 1147 (Idaho 2022) (noting of *Larson's* that it is "a leading treatise in the field of workers' compensation"); *Smith v. Goodyear Tire & Rubber Co.*, 636 N.W.2d 884, 888 (Neb. Ct. App. 2001) (stating of *Larson's* that it is "the leading treatise in the area"); *Gore v. Myrtle/Mueller*, 653 S.E.2d 400, 407 (2007) (describing *Larson's* as "a leading treatise").

to the circumstances of the present case, *Larson's* notes that the statutory employer test "presupposes" that the relationship between the injured employee's immediate employer and the company sued in tort is not of a type that falls outside the parameters of a principal-subcontractor relationship and includes as some examples of such excluded relationships "if the relation was that of *buyer to vendor*, lessee to lessor, or if the claimant was not an employee but an employer, partner, or joint venturer." 10 *Larson's Workers' Compensation Law* § 111.04[d] (emphasis added). If the presuppositions do not fit the circumstances of a given case, then *Larson's* states that "the general contractor is of course in no different position from any third party liable to suit." *Id.* Thus, backstage before one arrives at the primary test for determining subcontractor status, there is, under workers' compensation law in general, a presupposition being made that the purported subcontractor is not a vendor. In this case, the parties agree, however, that is precisely what Stanley National is in relation to Tractor Supply – a product vendor.

Under existing Tennessee caselaw, it is unclear, though, whether vendor status matters. As the majority notes, Tennessee's Workers Compensation Law provides that

> [a] principal contractor, intermediate contractor or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal contractor, intermediate contractor or subcontractor and engaged upon the subject matter of the contract to the same extent as the immediate employer.

Tenn. Code Ann. § 50-6-113(a). There is, as the majority indicates, a trade-off under Tennessee law for principal contractors, who become secondarily liable for workers' compensation for the employees of their subcontractors and who in turn gain immunity from tort liability. If Stanley National is Tractor Supply's subcontractor, then Tractor Supply benefits in the present case by avoiding being subject to Mr. Coblentz's premises liability claim.

This protection against being subject to liability is especially significant because Tennessee Law preserves the rights of workers to seek both workers' compensation from their employers and tort damages from tortfeasors who are not their employers. Under Tennessee Code Annotated section 50-6-112(a),

> When the injury or death for which compensation is payable under this chapter was caused under circumstances creating a legal liability against some person other than the employer to pay damages, the injured worker, or the injured worker's dependents, shall have the right to take compensation under this chapter, and the injured worker, or those to whom the injured worker's right of action survives at law, may pursue the injured worker's or their remedy by proper action in a court of competent jurisdiction against the other person.

Tenn. Code Ann. § 50-6-112(a). Relatedly, Tennessee law also provides rights to the employers in connection with their employees' workers' compensation in the event of a recovery against the tortfeasor. Tenn. Code Ann. § 50-6-112(c).[2]

Perhaps the closest analog to the circumstances of the present case are those cases involving the sale and delivery of goods which have been considered in multiple states in determining statutory employer status. In accord with the understanding set forth in *Larson's* regarding vendors, the Kansas Supreme Court concluded nearly fifty years ago "that a sale and delivery of merchandise is not . . . a contractual relationship" that converts the selling/delivering business entity into a subcontractor. *Bendure v. Great Lakes Pipe Line Co.*, 433 P.2d 558, 563-64 (1967). The Kansas Supreme Court added that its conclusion that such a relationship does not create a statutory employer status aligned with what it described as the general rule that workers' compensation "does not apply where the transaction between the immediate employer and the person sought to be held liable as his employer is that of purchase and sale." *Id.* (quoting 99 C.J.S. Workmen's Compensation § 107).[3]

---

[2] Tennessee Code Annotated section 50-6-112(c) provides as follows:

(c)(1) In the event of a recovery against the third person by the worker, or by those to whom the worker's right of action survives, by judgment, settlement or otherwise, and the employer's maximum liability for workers' compensation under this chapter has been fully or partially paid and discharged, the employer shall have a subrogation lien against the recovery, and the employer may intervene in any action to protect and enforce the lien.

(2) In the event the net recovery by the worker, or by those to whom the worker's right of action survives, exceeds the amount paid by the employer, and the employer has not, at the time, paid and discharged the employer's full maximum liability for workers' compensation under this chapter, the employer shall be entitled to a credit on the employer's future liability, as it accrues, to the extent the net recovery collected exceeds the amount paid by the employer.

(3) In the event the worker, or those to whom the worker's right of action survives, effects a recovery, and collection of that recovery, from the other person, by judgment, settlement or otherwise, without intervention by the employer, the employer shall nevertheless be entitled to a credit on the employer's future liability for workers' compensation, as it accrues under this chapter, to the extent of the net recovery.

[3] The present version of the Corpus Juris Secundum Workers' Compensation treatise has moved the relevant section and now provides as follows:

The workers' compensation act does not apply where the transaction between the immediate employer and the person sought to be held liable as its employer is that of purchase and sale. Under some statutory provisions, however, when a contract to sell is accompanied by an undertaking by either party to render substantial services in connection with the goods sold, that party is a contractor within the meaning of the compensation act.

- 3 -

Judicial decisions interpreting various state workers' compensation statutes before and shortly after the *Bendure* case are generally in accordance with this understanding. *See*, *e.g.*, *Brothers v. Dierks Lumber & Coal Co.*, 232 S.W.2d 646, 650 (Ark. 1950) (concluding that contracts relating to the sale of goods do not make "either the buyer or seller, or both, a 'contractor'" within the principal-subcontractor parameters for creating statutory employer status under Arkansas' workers' compensation law); *Broussard v. Heebe's Bakery, Inc.*, 268 So. 2d 656, 660 (La. 1972) (quoting 99 C.J.S. Workmen's Compensation § 107)[4] ("The compensation act does not apply where the transaction between the immediate employer and the person sought to be held liable as his employer is that of purchase and sale, or where some other relation besides that of principal and contractor exists between them."); *Hooks v. Wayne Cnty. Road Comm'rs*, 76 N.W. 2d 9, 12 (Mich. 1956) (declining to extend worker's compensation liability based on finding that the injured worker's immediate employer enjoyed "a vendor-purchaser relation" with the board); *Heider v. Stoughton*, 150 Neb. 741, 744, 35 N.W.2d 814, 815 (1949) ("[T]he defendant got the lumber removed from its yard, but that result naturally would follow from every sale of merchandise, and thus would be of no controlling importance. It cannot be logically concluded that [Nebraska Workers' Compensation Law] should have any application to the relation of a bona fide vendor and vendee.").

Though there are exceptions,[5] this general rule continues to hold decades later. For example, the Oklahoma Supreme Court reasoned as follows:

> If we were to expand the term to include the relationship of buyer and seller of a commodity or material, we would violate fundamental rules of construction which require that words have the same meaning as that attributed to them in ordinary and usual parlance. Whatever activities might render someone an independent contractor, acting as a mere vendor is not one of them. We do not believe the Legislature intended § 11 to apply when the relationship between the injured worker's immediate employer and the entity sought to be held liable in tort as a "statutory employer" is that of vendor/vendee.

*Hammock v. United States*, 78 P.3d 93, 97-98 (Okla. 2003) (footnotes omitted). The Idaho Supreme Court similarly adopted "the general rule" that, where the relationship between

---

A compensation act is likewise not applicable where some other relation, besides that of principal and contractor, exists between the parties.

99 C.J.S. Workers' Compensation § 241 (2024).

[4] See infra n. 3.

[5] *Humphrey v. Whole Foods Mkt. Rocky Mtn./S.W. L.P.*, 250 P.3d 706, 710 (Colo. App. 2010).

the employers involves the sale and delivery of goods, the relationship does not qualify as a statutory employer relationship even where some ancillary services are performed. *See Kelly v. TRC Fabrication, LLC*, 487 P.3d 723, 728-29 (Idaho 2021). In doing so, the Idaho Supreme Court recognized two limited exceptions: "when the contract to sell is accompanied by an undertaking to render substantial services in connection with the goods sold, or where the transaction is a mere device or subterfuge to avoid liability under the state's worker's compensation laws." *Id.* at 729.

This "substantial services" limitation has roots that reach back to the aforementioned foundational cases. For example, the Kansas Supreme Court stated that "[t]he rule stated is subject to the exception that when the contract to sell is accompanied by an undertaking by either party to render substantial services in connection with the goods sold, that party is a contractor within the meaning of the statute." *Bendure*, 433 P.2d at 564. Similarly, the Arkansas Supreme Court concluded that "when the contract to sell is accompanied by an undertaking by either party to render substantial services in connection with the goods sold, that party is a 'contractor' within the meaning of the section." *Brothers*, 232 S.W.2d at 650.

Two South Carolina appellate decisions offer illuminating examples of how courts address such matters: *Meyer v. Piggly Wiggly Number 24*, 500 S.E.2d 190 (S.C. Ct. App. 1998) and *Hancock v. Wal-Mart Stores, Inc.*, 584 S.E.2d 398 (S.C. Ct. App. 2003). Turning first to *Meyer*,

> [John] Meyer worked as a route salesman for Derst [Baking Company], a wholesale bakery that distributes baked goods. As a route salesman, he delivered the baked goods to major grocery chains, convenience stores, and various fast-food restaurants. In addition to unloading the goods and stocking the shelves, Meyer's responsibilities included keeping the Derst display full and clean, and removing out-of-date and damaged product from the shelves.
>
> Piggly Wiggly is a typical retail grocery store operated for the purpose of selling groceries and other household items to consumers. . . .
>
> On December 7, 1992, Meyer stopped at Piggly Wiggly to make a delivery. He proceeded directly to the Derst display and began to straighten it up. While walking through the store on his way back to his truck, he slipped and fell. The fall injured his head, shoulders, and lower back. Meyer received workers' compensation benefits from his immediate employer, Derst, and brought this tort action against Piggly Wiggly.

*Meyer*, 500 S.E.2d at 191. In its analysis, the *Meyer* Court delineated the general parameters of South Carolina's primary test for determining principal-subcontractor

contractor status for purposes of being a statutory employer, referencing a test resembling Tennessee's approach. *Id*. at 192.

Ultimately, the *Meyer* Court concluded that the framework did not matter, though, because the relationship between Derst Bakery Company and Piggly Wiggly "was one of vendor-vendee" rather than principal-subcontractor and therefore the case was carved out of the general test. *Id*. at 193. The Court reasoned that

> . . . Derst's agreement with Piggly Wiggly was for the sale and delivery of a commodity. Derst was not Piggly Wiggly's subcontractor within the contemplation of that term as used in the statute. . . . Meyer's work stocking the shelves and maintaining the Derst display was incidental to the primary purpose of the arrangement between Derst and Piggly Wiggly, which was to provide baked goods for retail sale. Because Derst was a vendor rather than a subcontractor, section 42-1-400[6] does not apply and Meyer, therefore, is not Piggly Wiggly's statutory employee.

*Id*.; *aff'd Meyer v. Piggly Wiggly No. 24, Inc.*, 527 S.E.2d 761 (S.C. 2000).

On the same continuum but at the opposite end of the spectrum is *Hancock v. Wal-Mart Stores, Inc.*[7] Therein,

> Richard Hancock was injured while working for his employer on Wal-Mart's premises. Hancock filed suit in the circuit court, alleging his injuries were the result of Wal-Mart's negligence. . . .
>
> Tru-Wheels, Inc., one of Wal-Mart's vendors, employed Hancock. Tru-Wheels provided Wal-Mart with individuals to assemble and set up Wal–Mart merchandise in the store. Hancock assembled merchandise exclusively for Wal-Mart. On a typical day, Hancock would report to the Wal-Mart manager and receive instructions about which items to assemble. Hancock assembled the items on the Wal-Mart premises and would report any

---

[6] South Carolina Code Annotated section 42-1-400 (1985) provided as follows:

When any person, in this section and §§ 42-1-420 and 42-1-430 referred to as "owner," undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section and §§ 42-1-420 to 42-1-450 referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Title which he would have been liable to pay if the workman had been immediately employed by him.

[7] 584 S.E.2d 398 (S.C. Ct. App. 2003).

problems to the applicable Wal-Mart department manager. Hancock was injured when, in the course of assembling riding lawnmowers, a Wal-Mart employee ran over his foot with a forklift.

Hancock filed suit in the circuit court, alleging his injuries were the result of Wal-Mart's negligence. Wal-Mart filed a motion for summary judgment, arguing Hancock was a statutory employee and thus had workers' compensation as his exclusive remedy.

*Id*. at 399. The South Carolina Court of Appeals concluded that this relationship was not truly a vendor-vendee relationship, despite Mr. Hancock invoking *Meyer* and labeling it as such. *Id*. at 401. The court instead applied South Carolina's general framework for principal-subcontractor analysis and concluded that Hancock qualified as a statutory employee of Wal-Mart. *Id*.

Tennessee is certainly free to diverge from the general approach of its sister states. However, it is not clear why Tennessee's Workers' Compensation Law would operate differently than the statutes at issue in the aforementioned cases in dealing with vendor-vendee relationships. The very concept of "employer" under Tennessee's Workers' Compensation Law is defined in relation to paying for services: "'Employer' includes any individual, firm, association or corporation, the receiver or trustee of the individual, firm, association or corporation, or the legal representative of a deceased employer, *using the services* of not less than five (5) persons for pay . . . ." Tenn. Code Ann. § 50-6-102(11) (emphasis added); *accord Kelly*, 487 P.3d at 727-28 (analyzing similar language under the Idaho Workers' Compensation Act in arriving at the conclusion that vendor-vendee relationships fall outside the scope of Idaho's principal-subcontractor provision). It is critical to Tractor Supply being classified as a statutory employer that it is a "principal contractor" and that Stanley National is its "subcontractor." *See* Tenn. Code Ann. § 50-6-113(a).

The subcontractor language of the Tennessee Code was adopted into Tennessee law in 1919. 1919 Pub. Acts, ch. 123, § 15. From its roots, stretching long before 1919, the definition of subcontractor has been connected with performing work. Tracing the definition and usage of the word to the end of the 1700s with a continuation of that same meaning to the present, the Oxford English Dictionary defines a subcontractor as "[a] person who or company which undertakes work under a subcontract, or (more generally) undertakes work on a particular part of a larger project."[8] The Oxford English Dictionary's multiple definitions of subcontract as a verb similarly emphasize work being performed:[9]

---

[8] Subcontractor, Oxford English Dictionary, https://www.oed.com/dictionary/subcontractor_n?tab=meaning_and_use#20038073.

[9] Subcontract, Oxford English Dictionary, https://www.oed.com/dictionary/subcontract_v?tab=meaning_and_use#20037971. There is a fifth

One, "[t]o employ a person or company under a subcontract to undertake (all or part of the work specified in an original contract); to commission (work) from a subcontractor. Frequently with *out* in later use. Also in extended use: to delegate (work, a responsibility, etc.)."[10] Two, "[t]o employ a person or company under a subcontract; to make a subcontract with a third party; to grant a subcontract *for*."[11] Three, "[t]o undertake work as a subcontractor; to agree a subcontract *with* a person or company; to undertake a subcontract *for* work."[12] Four, "[t]o undertake or produce (work) under a subcontract."[13] Merriam-Webster Dictionary similarly traces the modern definition of the verb "subcontract" to before 1919 and aligns subcontract with the concept of work, defining the verb as follows: One, "to let out or undertake work under a subcontract." Two, "to engage a third party to perform under a subcontract all or part of (work included in an original contract)—sometimes used with *out*." Three, "to undertake (work) under a subcontract."[14]

The conventional understanding of a subcontract when used as a noun relates a contract with a third party to perform part or all of an existing obligation of the principal contractor to another, but that understanding does not conventionally fit with a vendor providing goods to a retailer. Defining subcontract as a noun, the Oxford English Dictionary and Merriam-Webster Dictionary note that a subcontract exists where a party to an original contract in turn contracts with a third party to undertake responsibilities under the original contract which could include providing work or materials.[15] Relatedly, tracing the definition to the late 1700s, Merriam-Webster Dictionary defines subcontractor as "an individual or business firm contracting to perform part or all of another's contract."[16] Similarly, Webster's 1909 New International Dictionary, the most proximate edition of Webster's in time to the 1919 adoption of the subcontractor language that is presently

---

definition of subcontract as a verb that is obsolete and related marriage: "To cause (a person) to become betrothed for a second time." *Id*.

[10] *Id*.

[11] *Id*.

[12] *Id*.

[13] *Id*.

[14] Subcontract, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/subcontract.

[15] Subcontract, Oxford English Dictionary, https://www.oed.com/dictionary/subcontract_n?tab=meaning_and_use; Subcontract, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/subcontract.

[16] Subcontractor, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/subcontractor.

codified in Tennessee Code Annotated section 50-6-113(a), defines subcontractor as "[o]ne who contracts with a contractor to perform part or all of the latter's contract" with subcontract as a noun defined as "a contract under, or subordinate to, a previous contract."[17] The contract here, however, is not for Stanley National, as a third party, to satisfy Tractor Supply's existing contractual obligations, whether they be for work or materials, under an original contract with another party. There is no other contract that Stanley National is contracting to perform all or part of. Instead, the only contract is the 2010 vendor agreement between Stanley National and Tractor Supply.

Turning to the 1910 Second Edition of Black's Law Dictionary, which is the edition published closest to 1919, it similarly defines subcontract and subcontractor in relation to work being performed.[18] It provides as follows:

> A contract subordinate to another contract made or intended to be made between the contracting parties on one part or some of them and a stranger. 1 II. Bl. 37 45. Where a person has contracted for the performance of certain work (e.g.. to build a house) and he in turn engages a third party to perform the whole or a part of that which is included in the original contract (e.g. to do the carpenter work.) his agreement with such third person is called a "subcontract" and such person is called a "subcontractor."[19]

In other words, the subcontracting is for the performance of work. *Id*. Even if considered in relation to contracts intended to be made, it is not clear how Tractor Supply and Stanley National's contract is subordinate to another contract. An expansive reading of this definition would threaten to convert every contract from product suppliers to retailers into principal and subcontractor agreements.

These dictionary definitions, which were applicable in 1919 when the General Assembly adopted the subcontractor measure and remain so, pose challenges to treating a vendor of goods to a retailer as a subcontractor. Also problematic, this court nearly eighty years ago, in addressing the principal-subcontractor language of the Tennessee Code in the context of a statutory employer application, indicated that "[t]he gist of this section is [a] relationship either ascending or descending or both." *Int'l Harvester Co. v. Sartain*, 222 S.W.2d 854, 863 (Tenn. Ct. App. 1948). It is not clear how the relationship between

---

[17] Subcontractor, Webster's New International Dictionary 2066 (1909), *available at* https://archive.org/details/webstersnewinter00unse_0/page/2066/mode/2up; Subcontract, Webster's New International Dictionary 2066 (1909), *available at* https://archive.org/details/webstersnewinter00unse_0/page/2066/mode/2up.

[18] Subcontract, Black's Law Dictionary (2d ed. 1910), *available at* https://dictionary.thelaw.com/subcontract/.

[19] *Id*.

Stanley National and Tractor Supply fits within this paradigm as an ascending, descending, or both an ascending and descending relationship. A concept of subcontractor sufficiently broad to reach the supplying of products for retail sale creates complexities in identifying precisely who is the subcontractor and who is the principal.

In the present case, the parties characterized themselves in their contractual agreement not as a principal and subcontractor but instead expressly identified Stanley National as a vendor. Their briefing before this court continues to include references to Stanley National as a vendor. In Tractor Supply's brief on appeal, it writes that it operates a "retail store" in Fayetteville, Tennessee, and that "Stanley National Hardware . . . is a vendor that sells products" at the Fayetteville store. Mr. Coblentz agrees, referring to Tractor Supply's Fayetteville storefront as just one of approximately 145 "hardware stores . . . and large hardware suppliers/distributors" he visits as part of his duties at Stanley National. As Mr. Coblentz's counsel noted "Stanley National provides the product and the defendant places that product in the store for sale. . . . Stanley National has the product and supply chain personnel, and Tractor Supply has the storefronts and the employees."

Stanley National's role in its relationship with Tractor Supply of a product vendor is reflected in Stanley National and Tractor Supply's 2010 Vendor Agreement. That document is entitled "Vendor Agreement" and expressly identifies Stanley National as a vendor. Even more importantly, the terms of the agreement also indicate that the substance of the contract between Stanley National and Tractor Supply is that of an agreement for the sale of goods. As a few of the many examples that pervade the contract, Section Six of the agreement, concerning "Vendor Quotes," states that "Vendor shall identify all goods it is offering to TSC together with a quote for each in response to a Request for Quote ("RFO") issued by a TSC Buyer. Such quote shall contain information including but not limited to: description of the goods, price, whether the price includes freight and minimum quantities (the "Quote")." Section Eight clarifies that the Vendor, Stanley National, retains "the right, at its discretion, to change or supplement *the goods offered for sale to TSC*, provided that Vendor provides written notice of any such change . . ." (Emphasis added). Section Nine concerns the logistics of shipping perishable goods. Section Ten outlines purchase orders and the process for canceling purchase orders "at any time before the shipment of the goods." Section Fifteen explains how to deal with returned goods, and Section Twenty outlines the parties' mutual expectations regarding the shipment of Stanley National goods. Section Seventeen—pertaining to the physical display of Stanley National goods that allegedly malfunctioned and caused Mr. Coblentz's injuries—indicates that Stanley National may have such a display and that it will contain "only Vendor's goods."

That parties label their agreement in terms of vendor rather than a principal-subcontractor relationship does not make it so. *See Harness v. Bechtel Jacobs Co., LLC*, No. E2006-00194-COA-R3-CV, 2007 WL 10447, at *3 (Tenn. Ct. App. Jan. 3, 2007). The agreement between Stanley National and Tractor Supply, however, goes far beyond simply labeling Stanley National as a vendor. In both substance and form, it appears that Stanley

National in its relationship with Tractor Supply is operating as a product vendor.

Existing Tennessee caselaw does not appear to have addressed vendor status in connection with the principal-subcontractor relationship for purposes of determining statutory employer status. The majority has applied existing Tennessee caselaw, and I find no fault in the majority's thoughtful analysis of existing caselaw. In my view, however, there is a gap in Tennessee's existing caselaw located right around *Larson's* presupposition regarding vendors. To address this gap, I would invite briefing from the parties to address whether, under the statutory measures that compose Tennessee's Workers' Compensation Law, a vendor-to-retailer relationship falls within the parameters of the principal-subcontractor relationship or whether it is presupposed that it is excluded. Additionally, I would invite the parties to address, assuming that such a presupposition exists under Tennessee's statutory scheme, at what point a contractual relationship as to the sale and delivery of goods become sufficiently imbued with services so as to create a potential principal-subcontractor relationship.[20] If Tennessee's Workers' Compensation Law includes the presupposition of its sister states with regard to vendors, this case should be remanded for the parties to have an opportunity to present their case under the appropriate standard.

Applying existing caselaw without integrating the limitation as to vendors threatens to make many more employers liable for workers' compensation of employees who are not their direct employees while reducing the protections of such employees against negligence by employers who are not their direct employer. Maybe the employers or employees would take the bitter with the sweet, but I am concerned that the statutory measures of Tennessee's

---

[20] Courts have taken different approaches in line drawing as to where the vendor-vendee presupposition exclusion ends and the relationship becomes amenable to being considered a principal-subcontractor relationship. Virginia courts appear to have adopted a restrictive approach looking at any activities that are not the delivery of the goods. *Burch v. Hechinger Co.*, 563 S.E.2d 745, 747-48 (Va. 2002). Alternatively, multiple jurisdictions appear to draw the line in connection with providing "substantial services in connection with the goods sold." *See*, *e.g.*, *Brothers*, 232 S.W.2d at 650 (Arkansas); *Gray Bldg. Sys. v. Trine*, 391 S.E.2d 764, 765 (Ga. 1990); *Kelly*, 487 P.3d at 729 (Idaho); *Bendure*, 433 P.2d at 564 (Kansas); *Broussard*, 268 So. 2d at 660 (Louisiana).

In a different context, addressing whether the common law or Uniform Commercial Code applies to breach of contract actions that involve hybrid contacts for goods and services, Tennessee courts have applied the predominant purpose test. *Audio Visual Artistry v. Tanzer*, 403 S.W.3d 789, 798-99 (Tenn. Ct. App. 2012) (citing *Pass v. Shelby Aviation*, No. W1999-00018-COA-R9-CV, 2000 WL 388775 (Tenn. Ct. App. April 13, 2000)). The predominant purpose test requires a reviewing court to examine (1) "the language of the contract," (2) "the nature of the business of the supplier of goods and services," (3) "the reason the parties entered into the contract," and (4) "the amounts paid for the rendition of services and goods, respectively." *Id*. at 799. In concluding that the relationship fell outside the reach of principal-subcontractor relationship and instead remained a vendor-vendee relationship (between the supplier and retailer), the South Carolina Court of Appeals emphasized "the primary purpose of the arrangement between Derst and Piggly Wiggly . . . was to provide baked goods for retail sale" with the services "incidental" to this primary purpose. *Meyer*, 500 S.E.2d at 193.

Workers' Compensation Law are being stretched too far, resulting in pushing the square peg, vendors of goods to retailers, into the round hole of existing caselaw. I respectfully dissent.

_____
JEFFREY USMAN, JUDGE